UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

William Oscar Ward

        Plaintiff/Petitioner - Appellant,

v.

Wesley Medical Center, et al

        Defendant/Respondent -
Appellee.

Case No: 25-3107

Appellant/Petitioner's Opening
Brief

## APPELLANT/PETITIONER'S OPENING BRIEF

1.  Statement of the Case.  (This should be a <u>brief</u> summary of the proceedings in the district

court.)

Plaintiff William Oscar Ward, proceeding pro se and with documented disabilities, filed this

action in the United States District Court for the District of Kansas against Wesley Medical

Center, LLC and HCA Healthcare, Inc., alleging disability discrimination under the ADA, FMLA

interference and retaliation, hostile work environment, failure to accommodate, and joint employer

liability. Plaintiff alleged he was terminated while on approved FMLA leave, and that the

employer's stated reasons for termination were pretextual.

Defendants denied liability, asserted that HCA was not plaintiff's employer, and claimed plaintiff

was terminated for job abandonment. The case involved extensive discovery, multiple motions for

extension and accommodation due to plaintiff's disabilities, and significant discovery disputes.

The court denied plaintiff's requests for a stay or further accommodation, limited the scope of

claims to those in the pretrial order, and excluded certain evidence submitted in reply briefing.

After discovery closed, both parties moved for summary judgment. On May 20, 2025, the district court granted summary judgment for defendants on all claims and dismissed the case with prejudice. Plaintiff timely appealed to the Tenth Circuit.

2.   Statement of Facts Relevant to the Issues Presented for Review.

A.  Employment and Performance

o   William Oscar Ward was hired as a Maintenance Mechanic by Wesley Medical Center, LLC on March 23, 2020. HCA Healthcare, Inc. is the parent company of Wesley Medical Center. [Dkt. 144, Pretrial Order at 2, § IV].

o   During his employment, Mr. Ward invented a fire sprinkler cleaning tool. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 2, ¶2] He received positive performance feedback and had no disciplinary record prior to the events at issue. [Dkt. 171 Pl. Reply Br. Supp. Mot. Summ. J. at 10; Dkt. 171-3, Ex. C (Wesley_000644–Wesley_000650)]

B. Workplace Conflict and Health Deterioration

i. In early 2021, Mr. Ward reported to management, Human Resources, and the HCA Ethics Line that others were attempting to take credit for his invention. [Dkt. 144, Pretrial Order at 3, ¶¶ vi–x]

ii. Following these reports, Mr. Ward experienced escalating workplace conflict and distress. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 12; Ex. HHH (Wesley_000865, WOWARD000140–142); Ex. LL (WOWARD000115–16, 19); Dkt. 144, Pretrial Order at 3, ¶¶ vi–x]

iii. In April 2021, Mr. Ward began experiencing severe anxiety and panic attacks, for which he

sought medical treatment. He was diagnosed with anxiety disorder, depression, and later, PTSD and other mental health conditions. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 3, ¶8; Ex. D; Dkt. 144, Pretrial Order at 3, ¶ xi; Ex. FFF (WOWARD000120–WOWARD000123)]

C. FMLA Leave and Employer Communications

i. On April 19, 2021, Mr. Ward filed for FMLA leave through the employer's Time Away From Work (TAFW) program, supported by medical documentation. TAFW sent Mr. Ward a packet outlining his responsibilities while on FMLA leave, including requirements for periodic updates and return-to-work documentation.
[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 3, ¶11; Ex. D; Dkt. 144, Pretrial Order at 7, ¶ xlii; Ex. BBB, Time Away from Work instruction to the Employee, Exhibit F, Lisa Clark Dep.].

ii. Following receipt of a medical certification, Mr. Ward's FMLA leave was initially approved from April 12, 2021, through April 20, 2021, with his provider stating he could return to work on April 21, 2021.
[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 3, ¶18; Ex. D; Dkt. 144, Pretrial Order at 3, ¶ xix, and at 5, ¶ vii; Ex. L, FMLA Approval from April 12 to April 20, 2021, WWH-RPF1-000248].

iii. Mr. Ward requested an extension of his leave, which was approved, and his provider stated he could return to work on May 3, 2021. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 3, ¶19; Ex. D; Dkt. 144, Pretrial Order at 3, ¶ xx, and at 5, ¶ iii; Ex. X, April 26, 2021 –

Joshua Wigdahl Medical Certification, WWH-RPF1-000213]

iv. During his FMLA leave, Lisa Clark, Vice President of HR, contacted Mr. Ward multiple times, requesting meetings and updated documentation. On April 24, 2021, Mr. Ward emailed Ms. Clark to follow up on the investigation letter, requesting full investigation details. Ms. Clark left voicemails for Mr. Ward on April 28, April 30, and May 3, 2021, requesting to speak and instructing him to report to Human Resources before returning to work. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 3–4, ¶¶14–17; Ex. D; Dkt. 144, Pretrial Order at 3, ¶¶ xv–xviii, and at 5, ¶¶ xv–xviii; Exs. UU, VV, WW, XX]

v. On May 7, 2021, Ms. Clark emailed Mr. Ward requesting that he meet with her in Human Resources on May 10, 2021, at 7:00 a.m., and informed him that failure to report would be considered a separation of employment. Mr. Ward responded the same day, informing Ms. Clark that his new return-to-work date was May 24, 2021.
[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 4, ¶¶20–21; Ex. D; Dkt. 144, Pretrial Order at 3, ¶ xxiii, at 4, ¶ xxiv, and at 6, ¶ xxii; Ex. V, May 7, 2021 – Lisa Clark email to Plaintiff, WWH-RPF1-000237]

vi. On May 7, 2021, Lisa Kramer, LSCSW, submitted documents to TAFW supporting Mr. Ward's request for FMLA leave from April 22, 2021, to May 23, 2021, with a new return-to-work date of May 24, 2021. TAFW acknowledged receipt of this documentation on May 10, 2021.
[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 4, ¶¶22–23; Ex. D; Dkt. 144, Pretrial Order at 4, ¶¶ xxv–xxvi, and at 6, ¶¶ xxiii–xxiv; Ex. W, May 7, 2021 – Lisa Kramer

Medical Certification, WWH-RPF1-000237; Ex. KK, May 10, 2021 – TAFW received Plaintiff's New RTW Date, Wesley_000100–101]

vii. Mr. Ward's FMLA leave was approved from April 22, 2021, to May 23, 2021.

[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 4, ¶28; Ex. D; Dkt. 144, Pretrial Order at 4, ¶ xxix, and at 5, ¶ viii; Ex. M, FMLA Approval from April 22 to May 23, 2021, WWH-RPF1-000148].

viii. Mr. Ward's Short-Term Disability was approved from April 22, 2021, to May 2, 2021.

[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 4, ¶29; Ex. D; Dkt. 144, Pretrial Order at 4, ¶ xxx, and at 7, ¶ xli; Ex. N, Approval for Plaintiff's Short-Term Disability (sent to Defense on September 4, 2024, as part of Supplemental Initial Disclosure)].

ix. During her deposition, Lisa Clark, Vice President of Human Resources, admitted that she was not Mr. Ward's supervisor and had no direct authority over him, and further testified that Mr. Ward was not required to communicate with her regarding his leave.

[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 3, ¶12; Ex. Q, Lisa Clark Dep. at 32:13–23; Ex. R, Lisa Clark Dep. at 37:6–23].

x. On May 12, 2021, Ms. Clark contacted Mr. Ward via email and stated, "We have not received any documentation supporting a request for leave beyond May 3, 2021." She requested a meeting on May 14, 2021, stating, "I am giving you one final opportunity to report for a meeting with me, Brian, and Jeff to discuss the events of April. Your early departure is not the only topic we need to cover. Please report to Human Resources on May 14, 2021, at 7:00 a.m. Failure to report to this meeting will result in your termination." [Dkt. 171, Pl.

Reply Br. Supp. Mot. Summ. J. at 4, ¶24; Ex. D; Dkt. 144, Pretrial Order at 4, ¶ xxvii, and at 6, ¶ xix; Ex. O, May 12, 2021, Lisa Clark email, WWH-RPF1-000263].

xi. On May 14, 2021, Mr. Ward did not attend the 7:00 a.m. meeting with Ms. Clark from Human Resources due to his ongoing FMLA leave and medical condition.
[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 4, ¶25; Ex. D; Dkt. 144, Pretrial Order at 4, ¶ xxviii; Ex. MM, Deposition of Lisa Clark (VP of HR) at 40:5–8].

D. Termination and Aftermath

i. On May 24, 2021, Mr. Ward filed for unemployment benefits. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶26].

ii. On May 26, 2021, Mr. Ward's wife contacted Time Away From Work (TAFW) to confirm the status of Mr. Ward's FMLA and GML claims. An advocate from TAFW confirmed that the medical certifications submitted on May 7, 2021, and May 24, 2021, were sufficient to support and approve Mr. Ward's FMLA leave. This confirmation is documented in TAFW records.[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶27; Ex. ZZ, Wesley_000177].

iii. Following Mr. Ward's filing for unemployment, Defendants sent their "Sides Employer Separation Response Information Response" to unemployment, stating that Mr. Ward requested an extension and had until June 9, 2021, to submit paperwork. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶30; Ex. E, WOWARD000186]

iv. On June 4, 2021, Mr. Ward's TAFW advocate returned a call from Mr. Ward's wife and left a voicemail confirming that Mr. Ward's FMLA claim was processed on May 12, 2021. The

advocate further stated that the date of notice did not affect the approval of the claim. This confirmation is documented in TAFW records. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶31; Ex. AAA, Wesley_000179].

v. On June 18, 2021, Lisa Clark emailed several of Mr. Ward's supervisors, stating that Mr. Ward would likely remain on protected leave until July 5, 2021, when his FMLA would run out. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶32; Ex. D; Dkt. 144, Pretrial Order at 4, ¶ xxxii, and at 6, ¶ xxix; Ex. U, Wesley_000986]

vi. On July 7, 2021, Lisa Clark emailed Mr. Ward, claiming that he had contacted TAFW to request an extension of his leave beyond May 24, 2021, and that the request had been denied. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶33; Ex. D; Dkt. 144, Pretrial Order at 6, ¶ xxviii; Ex. F, Wesley_000591]

vii. Mr. Ward did not respond to the July 7, 2021, email, believing he had already been terminated, and had filed for unemployment benefits.

viii. Lisa Clark had no evidence that Mr. Ward contacted TAFW to request additional leave. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶34; Ex. D; Dkt. 144, Pretrial Order at 4, ¶ xxxiii; Ex. G, Lisa Clark Dep. at 47:18–25]

ix. On July 12, 2021, the Unemployment Office issued a notice of determination stating that Mr. Ward was ineligible for unemployment benefits due to being classified as on a voluntary leave of absence from work. This classification was based on inaccurate information provided by Defendants, as Mr. Ward was terminated on May 14, 2021, while on approved FMLA leave. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶35; Ex. CCC,

WOWARD000192]

x. On July 13, 2021, Lisa Clark emailed Patrick Davis, HR Liaison for Time Away From Work Services Center, stating, "Can you confirm that William Ward has not reached out or created another claim? We are looking at terminating him since he is no longer on a protected leave." [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶36; Ex. D; Dkt. 144, Pretrial Order at 4, ¶ xxxv; Ex. T, Wesley_000163–164].

xi. On July 20, 2021, Mr. Ward filed an appeal with the Unemployment Office regarding the denial of his unemployment benefits, based on the misclassification of his employment status as a voluntary leave of absence. The Unemployment Office scheduled a telephone hearing for September 1, 2021, to review the appeal. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶37; Ex. DDD, WOWARD000194–000195; Ex. EEE, WOWARD000196]

xii. On September 9, 2021, the Unemployment Office issued a determination following Mr. Ward's hearing, concluding that Mr. Ward was on approved FMLA leave, that his physician had released him to return to work on May 24, 2021, without restrictions, and that his employer discharged him on May 14, 2021. These findings confirm that Mr. Ward complied with all FMLA requirements and that his termination occurred while he was protected under the FMLA. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 5, ¶38; Ex. H, WOWARD000202–000203].

E. Administrative Proceedings and Litigation

i. Mr. Ward filed a charge of discrimination with the EEOC, alleging disability discrimination, FMLA interference and retaliation, and hostile work environment. On May 10, 2023, the

EEOC issued a Dismissal and Notice of Rights, granting Mr. Ward the right to sue Wesley Medical Center and HCA Healthcare, Inc.

[Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 7, ¶40; Ex. A, EEOC Right to Sue Letter, WOWARD000227].

ii. Mr. Ward filed this lawsuit in the United States District Court for the District of Kansas on May 12, 2023, against Wesley Medical Center and HCA Healthcare, Inc. In this lawsuit, HCA Healthcare, Inc. asserted that it is not Mr. Ward's employer. Mr. Ward proceeded pro se and with documented disabilities, including severe anxiety, PTSD, depression, and related conditions. [Dkt. 171, Pl. Reply Br. Supp. Mot. Summ. J. at 7, ¶41; Ex. D; Dkt. 144, Pretrial Order at 12, Section B, ¶ i].

iii. During litigation, Mr. Ward, proceeding pro se and with documented disabilities, experienced significant mental health challenges, including a severe panic attack during his deposition on April 9, 2024, which required emergency medical attention. Mr. Ward's providers recommended a six-month period for stabilization, as documented in a medical evaluation by his psychiatrist, Amanda Haworth, attached as Exhibit A to Docket 85.

[Dkt. 85, Pl. Mot. for Extension, Ex. A (Medical Evaluation by Amanda Haworth, Psychiatrist)].

iv. Mr. Ward filed multiple motions seeking a stay or extension of deadlines due to his health, including a Motion to Stay Proceeding Due to Plaintiff's Health Issue [Dkt. 67], a Motion for Extension of Discovery Period [Dkt. 70], and a further Motion for Extension supported by his psychiatrist [Dkt. 86]. [Dkt. 67, Pl. Mot. to Stay Proceeding Due to Health Issue;

Dkt. 70, Pl. Mot. for Extension of Discovery Period; Dkt. 85, Pl. Mot. for Extension, Ex. A (Medical Evaluation by Amanda Haworth, Psychiatrist); Dkt. 86, Pl. Mot. for Extension (6/20/24)]

v. On June 20, 2024, the court held a status conference to address Mr. Ward's motion for an extension of the stay due to mental health issues. The court granted a final 30-day extension, directing Mr. Ward to provide an update on his mental health and ability to continue with the case, and reminding him that failure to prosecute could result in dismissal. The court also instructed the parties to discuss possible dismissal without prejudice, tolling of the statute of limitations, and mediation.
[Dkt. 88, Order Granting in Part and Denying in Part Motion for Extension of Stay, June 20, 2024].

vi. After this final extension, Mr. Ward filed a further Motion for Extension supported by his psychiatrist [Dkt. 86]. On July 22, 2024, the court denied Mr. Ward's request for an extension due to health issues and ordered that the case resume according to the existing schedule. Mr. Ward was required to continue litigating the case despite his ongoing medical issues and being medicated.[Dkt. 91, Order Denying Extension, July 22, 2024].

vii. The court limited the scope of Mr. Ward's claims to those specifically listed in the pretrial order and disregarded certain evidence submitted in reply briefing. [Dkt. 144, Pretrial Order; Dkt. 173, Summary Judgment Order].

viii. After discovery closed, both parties filed motions for summary judgment. On May 20, 2025, the district court granted summary judgment in favor of the defendants on all claims and

denied Mr. Ward's cross-motion for summary judgment. Judgment was entered for the defendants, and Mr. Ward's claims were dismissed with prejudice. The court's Memorandum and Order was filed on May 20, 2025, Docket No. 173. Mr. Ward timely filed a notice of appeal to the United States Court of Appeals for the Tenth Circuit. [Dkt. 173, Summary Judgment Order; Dkt. 180, Notice of Appeal].

## Statement of Issues.

**A. First Issue:**

Whether the district court erred in granting summary judgment to the defendants on Mr. Ward's claim of disability discrimination under the Americans with Disabilities Act (ADA), where there was evidence of a qualifying disability, protected activity, and adverse employment action.

**Legal Standard**

Summary judgment is proper only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. The Tenth Circuit reviews summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. To establish a prima facie ADA discrimination claim, a plaintiff must show: (1) a qualifying disability; (2) an adverse employment action; and (3) a causal connection. The burden then shifts to the employer to state a legitimate, non-discriminatory reason, and back to the plaintiff to show pretext. See Smothers v. Solvay Chemicals, Inc., 740 F.3d 530, 538 (10th Cir. 2014); Davidson v. America Online, Inc., 337 F.3d 1179, 1188 (10th Cir. 2003); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

**Argument:**

**Qualifying Disability and Protected Activity:**

A-12 Appellant/Petitioner's Opening Brief – 12/16                    Page 11

Mr. Ward submitted medical records and provider letters documenting anxiety disorder, PTSD, and depression, substantially limiting major life activities. The employer recognized his need for FMLA leave and received multiple medical certifications. [Dkt. 171 at 3, ¶8; Ex. D; Dkt. 144 at 3, ¶ xi; Ex. FFF]

**Qualified Individual:**

Mr. Ward performed his job successfully prior to his disability, with positive evaluations and no discipline. Medical documentation confirmed he could perform essential job functions with or without accommodation. [Dkt. 171 at 10; Dkt. 171-3, Ex. C]

**Adverse Employment Action:**

Mr. Ward was terminated while on approved FMLA leave—an adverse employment action under the ADA. [Dkt. 171 at 5, ¶33; Ex. F; Dkt. 144 at 4, ¶ xxviii; Ex. MM]

**Causation and Pretext:**

The timing of termination closely followed Mr. Ward's disability disclosure and accommodation requests. HR communications referenced his leave and medical status. The employer's stated reason—job abandonment—was contradicted by evidence that Mr. Ward provided timely medical documentation and notice of return. The Kansas Department of Labor found he was on protected leave at termination. The employer's shifting explanations and disregard of medical evidence support a finding of pretext. [Dkt. 171 at 4, ¶21; Ex. V; Dkt. 171 at 5, ¶34; Ex. G; Dkt. 171 at 5, ¶38; Ex. H]

**Genuine Disputes of Material Fact:**

These facts, viewed in the light most favorable to Mr. Ward, create genuine disputes regarding

disability, causation, and pretext, precluding summary judgment. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147–48 (2000).

**Authorities:**

Smothers v. Solvay Chemicals, Inc., 740 F.3d 530 (10th Cir. 2014); Davidson v. America Online, Inc., 337 F.3d 1179 (10th Cir. 2003); EEOC v. C.R. England, Inc., 644 F.3d 1028 (10th Cir. 2011); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

**B.  Second Issue:**

Whether the district court erred in granting summary judgment to the defendants on Mr. Ward's claims of interference and retaliation under the Family and Medical Leave Act (FMLA), where there was evidence that Mr. Ward was on approved FMLA leave at the time of his termination.

**Legal Standard**

Summary judgment is proper only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. The Tenth Circuit reviews summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. The FMLA prohibits employers from interfering with, restraining, or denying the exercise of FMLA rights, and from retaliating against employees for exercising those rights. See 29 U.S.C. § 2615(a); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170–71 (10th Cir. 2006); Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007).

**Argument:**

**Protected FMLA Status:**

Mr. Ward was on approved FMLA leave at the time of his termination, having submitted timely medical certifications, received leave extensions, and provided notice of his return-to-work date. The employer's records and communications acknowledged his FMLA status, and the Kansas Department of Labor confirmed he was on protected leave when terminated. [Dkt. 171 at 3, ¶11; Ex. D; Dkt. 144 at 7, ¶ xlii; Ex. BBB; Dkt. 171 at 4, ¶22; Ex. W; Dkt. 171 at 5, ¶38; Ex. H]

**Interference with FMLA Rights:**

Terminating Mr. Ward while on approved FMLA leave interfered with his statutory rights. The FMLA prohibits using leave as a negative factor in employment decisions. The employer's stated reason—job abandonment—was contradicted by evidence that Mr. Ward provided all required documentation and notice, and the employer was aware of his ongoing leave. [Dkt. 171 at 4, ¶21; Ex. V; Dkt. 171 at 5, ¶33; Ex. F; Dkt. 144 at 4, ¶ xxviii; Ex. MM]

**Retaliation and Pretext:**

The timing of Mr. Ward's termination, closely following his exercise of FMLA rights, supports an inference of retaliation. The employer's shifting explanations and disregard of medical documentation further support pretext. The record shows the employer continued to request meetings and threatened termination despite being in possession of medical certifications and FMLA approvals. [Dkt. 171 at 4, ¶24; Ex. O; Dkt. 171 at 5, ¶34; Ex. G]

**Genuine Disputes of Material Fact:**

Viewing the evidence in the light most favorable to Mr. Ward, a reasonable jury could find that the employer interfered with his FMLA rights and retaliated against him for exercising those rights. The district court improperly resolved factual disputes and weighed credibility, which is not

appropriate at summary judgment. See Campbell, 478 F.3d at 1287.

**Authorities:**

29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164 (10th Cir. 2006); Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282 (10th Cir. 2007); Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955 (10th Cir. 2002).

**C.  Third Issue:**

Whether the district court erred in granting summary judgment to the defendants on Mr. Ward's claim of hostile work environment, where there was evidence of severe and pervasive harassment related to Mr. Ward's disability and protected activity.

**Legal Standard**

Summary judgment is proper only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. The Tenth Circuit reviews summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. To establish a hostile work environment under the ADA, a plaintiff must show: (1) a qualifying disability; (2) unwelcome harassment; (3) harassment based on disability or protected activity; (4) harassment that is severe or pervasive enough to alter employment conditions; and (5) employer knowledge and failure to act. See Lanman v. Johnson County, Kansas, 393 F.3d 1151, 1155–56 (10th Cir. 2004); MacKenzie v. City & Cnty. of Denver, 414 F.3d 1266, 1280 (10th Cir. 2005).

**Argument:**

**Qualifying Disability and Protected Activity:**

Mr. Ward was diagnosed with anxiety disorder, PTSD, and depression, substantially limiting

major life activities. The employer recognized his disability by approving FMLA leave and receiving medical certifications. [Dkt. 171 at 3, ¶8; Ex. D; Dkt. 144 at 3, ¶ xi; Ex. FFF]

**Unwelcome Harassment:**

The record shows repeated harassment, including tampering with Mr. Ward's work equipment, intimidation, threats, and false claims of ownership of his invention. These incidents were reported to management and HR. [Dkt. 171 at 12; Ex. HHH; Ex. LL; Dkt. 144 at 3, ¶¶ vi–x]

**Harassment Based on Disability/Protected Activity:**

The harassment escalated after Mr. Ward disclosed his disability and requested FMLA leave and accommodations. Coworkers and management targeted him for his protected activity and disability status, including retaliatory conduct after complaints and leave requests. [Dkt. 144 at 3, ¶¶ vi–x; Dkt. 171 at 12; Ex. HHH; Ex. LL]

**Severity and Pervasiveness:**

The conduct was ongoing and not isolated, affecting Mr. Ward's mental health and contributing to his need for leave and eventual termination. A reasonable jury could find the harassment severe or pervasive enough to alter employment conditions. See Lanman, 393 F.3d at 1156.

**Employer Knowledge and Failure to Act:**

Mr. Ward repeatedly reported the harassment to management, HR, and the HCA Ethics Line, but the employer failed to take prompt or effective remedial action, and the harassment continued. [Dkt. 144 at 3, ¶¶ vi–x; Dkt. 171 at 12; Ex. HHH; Ex. LL]

**Genuine Disputes of Material Fact:**

Viewing the evidence in the light most favorable to Mr. Ward, a reasonable jury could find severe

and pervasive harassment based on disability and protected activity, and that the employer failed to act. The district court improperly resolved factual disputes and credibility determinations. See Ford v. Jackson Nat'l Life Ins. Co., 45 F.4th 1202, 1220 (10th Cir. 2022).

**Authorities:**

Lanman v. Johnson County, Kansas, 393 F.3d 1151 (10th Cir. 2004); Ford v. Jackson Nat'l Life Ins. Co., 45 F.4th 1202 (10th Cir. 2022); MacKenzie v. City & Cnty. of Denver, 414 F.3d 1266 (10th Cir. 2005); EEOC v. C.R. England, Inc., 644 F.3d 1028 (10th Cir. 2011).

**D. Fourth Issue:**

Whether the district court erred in granting summary judgment to the defendants on Mr. Ward's claim of failure to accommodate, where Mr. Ward requested reasonable accommodation regarding his documented disabilities.

**Legal Standard**

To prevail on a failure to accommodate claim under the ADA, a plaintiff must show: (1) a qualifying disability; (2) employer knowledge of the disability; (3) a request for reasonable accommodation; and (4) the employer's failure to provide it. The ADA requires an interactive process to identify and implement accommodation. See Punt v. Kelly Services, 862 F.3d 1040, 1048 (10th Cir. 2017); Smith v. Midland Brake, Inc., 180 F.3d 1154, 1171 (10th Cir. 1999) (en banc).

**Argument:**

**Qualifying Disability and Employer Knowledge:**

Mr. Ward provided medical documentation of anxiety disorder, PTSD, and depression,

substantially limiting major life activities. The employer recognized his need for FMLA leave and received multiple medical certifications. [Dkt. 171 at 3, ¶8; Ex. D; Dkt. 144 at 3, ¶ xi; Ex. FFF]

**Request for Accommodation:**

Mr. Ward repeatedly notified Human Resources and management of his conditions, submitted provider letters, and requested leave as an accommodation, providing updated medical documentation and return-to-work dates throughout his employment. [Dkt. 171 at 3, ¶11; Ex. D; Dkt. 144 at 7, ¶ xlii; Ex. BBB; Dkt. 171 at 4, ¶22; Ex. W]

**Failure to Accommodate and Interactive Process:**

Despite these requests and supporting documentation, the employer denied additional leave or flexibility, insisted on rigid attendance at meetings during approved leave, and ultimately terminated Mr. Ward while he was on protected leave. The record does not reflect any meaningful effort to engage in the interactive process. See Smith, 180 F.3d at 1172. [Dkt. 171 at 4, ¶24; Ex. O; Dkt. 144 at 4, ¶ xxvii; Ex. MM]

**Genuine Disputes of Material Fact:**

There is ample evidence that Mr. Ward requested reasonable accommodation, the employer was aware of his disabilities and failed to provide accommodation or engage in the interactive process. Whether the requested accommodations were reasonable and the employer's response adequate are questions for the jury. See Punt, 862 F.3d at 1048–49.

**Authorities:**

Punt v. Kelly Services, 862 F.3d 1040 (10th Cir. 2017); Smith v. Midland Brake, Inc., 180 F.3d 1154 (10th Cir. 1999) (en banc); 42 U.S.C. § 12112(b)(5)(A); Taylor v. Phoenixville Sch. Dist.,

184 F.3d 296, 312–13 (3d Cir. 1999).

**E. Fifth Issue:**

Whether the district court erred in granting summary judgment to HCA Healthcare, Inc. on the basis that it was not Mr. Ward's employer, despite evidence of joint employer status.

**Legal Standard**

An entity may be liable as a "joint employer" under the ADA and FMLA if it shares or co-determines essential terms and conditions of employment, such as hiring, firing, discipline, supervision, and direction of work. The Tenth Circuit applies a fact-intensive inquiry, considering the totality of the circumstances, including control over employment decisions and personnel policies. Summary judgment is improper if a reasonable jury could find joint employer status. See Knitter v. Corvias Military Living, LLC, 758 F.3d 1214, 1226–27 (10th Cir. 2014); Bristol v. Board of County Commissioners, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc); 29 C.F.R. § 825.104(c)-(d).

**Argument:**

**Evidence of Joint Employer Status:**

The record shows HCA Healthcare, Inc. is the parent of Wesley Medical Center, LLC, and HCA's corporate HR department—including its Vice President of HR—was directly involved in Mr. Ward's employment matters, including FMLA administration, leave approvals, and termination communications. HCA's HR personnel communicated with Mr. Ward about FMLA leave, required documentation, and return-to-work status. HCA's policies governed leave and discipline at Wesley, and the Time Away From Work (TAFW) program was operated at the corporate level

by HCA. In various communications, HCA and Wesley were presented as integrated entities, and HCA's HR staff exercised authority over Mr. Ward's employment status.

**Jury Question and Error Below:**

These facts, viewed in the light most favorable to Mr. Ward, support a finding that HCA exercised significant control over the essential terms and conditions of his employment, consistent with joint employer status under Tenth Circuit law. The district court erred by resolving disputed facts and failing to consider the totality of the evidence. Joint employer status is a question for the jury where there is evidence of shared control or co-determination of employment matters. See Knitter, 758 F.3d at 1227.

**Authorities:**

Knitter v. Corvias Military Living, LLC, 758 F.3d 1214 (10th Cir. 2014); Bristol v. Board of County Commissioners, 312 F.3d 1213 (10th Cir. 2002) (en banc); 29 C.F.R. § 825.104(c)-(d); Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993–94 (6th Cir. 1997).

**F. Sixth Issue:**

Whether the district court abused its discretion by denying Mr. Ward's motions for stay or extension of deadlines due to his documented disabilities and medical provider recommendations, thereby depriving Mr. Ward of a fair opportunity to litigate his claims.

**Legal Standard**

District courts have broad discretion to manage their dockets, but that discretion is not unlimited. Abuse of discretion occurs where a decision is arbitrary, unreasonable, or results in substantial prejudice—especially when a litigant's disability is at issue. The ADA and federal law require

courts to provide reasonable accommodations to litigants with disabilities, including extensions or deadline modifications as needed to ensure access to the courts. See Guttman v. Khalsa, 669 F.3d 1101, 1120 (10th Cir. 2012); Tennessee v. Lane, 541 U.S. 509, 523 (2004); 42 U.S.C. § 12132.

**Argument:**

**Documented Disabilities and Supported Requests:**

Mr. Ward, proceeding pro se, provided extensive medical documentation of his anxiety disorder, PTSD, and depression. His psychiatrist recommended a six-month stabilization period after a severe panic attack during deposition. These recommendations were submitted with multiple motions for stay or extension, all supported by medical evidence. [Dkt. 85, Ex. A; Dkt. 67; Dkt. 70; Dkt. 86]

**Court's Response and Resulting Prejudice:**

The court granted only a limited extension, then denied further requests despite ongoing medical need, requiring Mr. Ward to proceed on the existing schedule. As a result, he was deprived of a fair opportunity to fully and effectively litigate his claims. [Dkt. 88; Dkt. 91]

**Abuse of Discretion:**

The district court's refusal to grant reasonable accommodations or further extensions, in the face of uncontroverted medical evidence and the requirements of the ADA, was an abuse of discretion. The Tenth Circuit recognizes that denial of accommodations to a litigant with disabilities may constitute reversible error where it impairs access to the courts or the ability to present one's case. See Guttman, 669 F.3d at 1120; Lane, 541 U.S. at 523.

**Authorities:**

A-12 Appellant/Petitioner's Opening Brief – 12/16                    Page 21

Guttman v. Khalsa, 669 F.3d 1101 (10th Cir. 2012); Tennessee v. Lane, 541 U.S. 509 (2004); 42 U.S.C. § 12132; United States v. West, 828 F.2d 1468 (10th Cir. 1987).

**G. Seventh Issue:**

Whether the district court erred or abused its discretion by limiting the scope of Mr. Ward's claims and evidence to those specifically listed in the pretrial order, and by refusing to consider Mr. Ward's unemployment documentation and appeal results, which were material to his ADA and FMLA claims and submitted as part of the summary judgment record.

**Legal Standard**

The pretrial order controls the course of the action, but it is not a tool for excluding relevant, properly submitted, and preserved evidence. Exclusion of material evidence and limitation of claims are reviewed for abuse of discretion, and reversal is warranted where the court's actions are arbitrary, unreasonable, or result in substantial prejudice. See Fed. R. Civ. P. 16(d); Hullman v. Board of Trustees of Pratt Cmty. Coll., 950 F.2d 665, 668 (10th Cir. 1991); Smith v. Rogers Galvanizing Co., 128 F.3d 1380, 1383 (10th Cir. 1997).

**Argument:**

**Improper Limitation of Claims and Evidence:**

The district court restricted its consideration to claims and facts listed in the pretrial order [Dkt. 144], disregarding evidence submitted in reply briefing, including Mr. Ward's unemployment documentation and appeal results [Dkt. 171 at 5, ¶¶35–38; Ex. CCC; Ex. DDD; Ex. EEE; Ex. H].

**Material Evidence Excluded in Error:**

This evidence was timely submitted, directly corroborated Mr. Ward's protected status at

A-12 Appellant/Petitioner's Opening Brief – 12/16                                          **Page 22**

termination, and undermined the employer's stated reasons. The Supreme Court and Tenth Circuit require summary judgment to be based on the full record, including all properly submitted evidence. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

**Abuse of Discretion and Prejudice:**

Excluding material, timely evidence that was directly relevant to the claims at issue constitutes an abuse of discretion. The court's refusal to consider Mr. Ward's unemployment documentation and appeal results improperly narrowed the scope of litigation and resolved factual disputes that should have been left to a jury. See Hullman, 950 F.2d at 668; Trujillo v. Uniroyal Corp., 608 F.2d 815, 818 (10th Cir. 1979).

**Authorities:**

Fed. R. Civ. P. 16(d); Hullman v. Board of Trustees of Pratt Cmty. Coll., 950 F.2d 665 (10th Cir. 1991); Trujillo v. Uniroyal Corp., 608 F.2d 815 (10th Cir. 1979); Smith v. Rogers Galvanizing Co., 128 F.3d 1380 (10th Cir. 1997); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664 (10th Cir. 1998).

**<u>Do you think the district court applied the wrong law?  If so, what law do you want applied?</u>**

Yes. The district court misapplied or failed to apply the correct legal standards in several respects:

**ADA and FMLA Discrimination/Retaliation:**

The court did not properly apply the burden-shifting framework for ADA and FMLA claims as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and interpreted by the Tenth Circuit in Smothers v. Solvay Chemicals, Inc., 740 F.3d 530 (10th Cir. 2014), Davidson v.

America Online, Inc., 337 F.3d 1179 (10th Cir. 2003), and Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164 (10th Cir. 2006).

**FMLA Interference and Retaliation:**

The court failed to apply the law prohibiting interference with or retaliation for the exercise of FMLA rights. See 29 U.S.C. § 2615(a); Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282 (10th Cir. 2007).

**Hostile Work Environment:**

The court did not use the correct standard for ADA hostile work environment claims, which requires analysis of whether harassment was severe or pervasive and based on disability. See Lanman v. Johnson County, Kansas, 393 F.3d 1151 (10th Cir. 2004); Ford v. Jackson Nat'l Life Ins. Co., 45 F.4th 1202 (10th Cir. 2022).

**Failure to Accommodate:**

The court did not apply the law requiring employers to engage in an interactive process and provide reasonable accommodations to qualified individuals with disabilities. See Smith v. Midland Brake, Inc., 180 F.3d 1154 (10th Cir. 1999) (en banc); Punt v. Kelly Services, 862 F.3d 1040 (10th Cir. 2017).

**Joint Employer Doctrine:**

The court failed to apply the correct standard for joint employer liability under the ADA and FMLA, which requires a fact-intensive inquiry into the parent company's control and involvement. See Knitter v. Corvias Military Living, LLC, 758 F.3d 1214 (10th Cir. 2014); Bristol v. Board of County Commissioners, 312 F.3d 1213 (10th Cir. 2002) (en banc); 29 C.F.R. §

825.104(c)-(d).

**Procedural and Evidentiary Law:**

The court improperly limited the scope of claims and evidence to those listed in the pretrial order, excluding material evidence (such as unemployment documentation and appeal results) that was timely submitted and directly relevant. See Hullman v. Board of Trustees of Pratt Cmty. Coll., 950 F.2d 665 (10th Cir. 1991); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664 (10th Cir. 1998).

**Accommodation of Litigants with Disabilities:**

The court failed to apply the law requiring reasonable accommodations for litigants with disabilities, as mandated by the ADA and recognized in Tennessee v. Lane, 541 U.S. 509 (2004); Guttman v. Khalsa, 669 F.3d 1101 (10th Cir. 2012).

The correct law to be applied includes the substantive and procedural standards under the ADA, FMLA, and relevant Tenth Circuit and Supreme Court precedent, as cited above. The district court should have applied these standards to the full record, resolving genuine disputes of material fact in favor of the non-moving party, and ensuring that Mr. Ward's rights as a disabled, pro se litigant were fully protected.

<u>**Did The District Court Incorrectly Decide The Facts? If So, What Facts?**</u>

Yes, the district court incorrectly decided or resolved disputed facts that should have been left to a jury. Specifically:

**Disability Status:** The court improperly resolved factual disputes regarding whether Mr. Ward was a qualified individual with a disability under the ADA, despite medical records and provider

letters documenting substantial limitations in major life activities (e.g., anxiety, PTSD, depression).

**Protected Activity and Employer Knowledge:** The court failed to credit evidence that Mr. Ward engaged in protected activity (requests for FMLA leave and accommodations) and that the employer was fully aware of his disability and ongoing medical status.

**Adverse Employment Action and Causation:** The court accepted the employer's stated reason for termination (job abandonment) and disregarded evidence that Mr. Ward was on approved FMLA leave, had provided timely medical documentation, and had notified the employer of his return-to-work date. The court did not properly consider the temporal proximity and communications linking Mr. Ward's protected activity to his termination.

**Pretext:** The court resolved factual disputes about whether the employer's stated reason for termination was pretextual, despite evidence of shifting explanations, disregard of medical documentation, and findings from the Kansas Department of Labor/unemployment proceedings that Mr. Ward was on protected leave at the time of termination.

**Hostile Work Environment:** The court failed to recognize genuine disputes of material fact regarding the severity and pervasiveness of harassment Mr. Ward experienced, including tampering with his equipment, intimidation, and management's failure to intervene, all of which were documented in the record.

**Failure to Accommodate:** The court did not credit evidence that Mr. Ward requested reasonable accommodations for his disabilities during employment, and that the employer failed to engage in the interactive process or provide accommodation.

**Joint Employer Status:** The court resolved disputed facts about HCA Healthcare, Inc.'s control over Mr. Ward's employment, despite evidence of HCA's direct involvement in HR decisions, leave administration, and termination.

**Exclusion of Material Evidence:** The court disregarded Mr. Ward's unemployment documentation and appeal results, which were timely submitted and material to his ADA and FMLA claims, on the ground that they were not included in the pretrial order.

**In summary:**

The district court improperly weighed evidence, resolved credibility issues, and decided genuine disputes of material fact that should have been presented to a jury. These errors affected the resolution of Mr. Ward's ADA, FMLA, hostile work environment, failure to accommodate, and joint employer claims, as well as the consideration of material evidence supporting those claims.

## Did The District Court Fail To Consider Important Grounds For Relief? If So, What Grounds?

**Yes, the district court failed to consider several important grounds for relief that were properly raised and supported by the record. Specifically:**

**Failure to Accommodate Disability During Employment:** The court did not fully consider Mr. Ward's requests for reasonable accommodation of his documented disabilities during his employment, including requests for leave and flexibility, and the employer's failure to engage in the interactive process as required by the ADA.

**FMLA Interference and Retaliation:** The court did not address the full scope of Mr. Ward's FMLA interference and retaliation claims, particularly the evidence that Mr. Ward was on

A-12  Appellant/Petitioner's Opening Brief – 12/16                    Page 27

approved FMLA leave at the time of his termination and that the employer's stated reason for termination was contradicted by the record.

**Hostile Work Environment:** The court failed to consider the evidence of severe and pervasive harassment related to Mr. Ward's disability and protected activity, including repeated incidents of intimidation, tampering, and management's failure to intervene, which were material to his hostile work environment claim.

**Joint Employer Liability:** The court did not properly consider the evidence supporting HCA Healthcare, Inc.'s status as a joint employer, including its direct involvement in HR decisions, leave administration, and termination.

**Procedural Fairness and Accommodation in Litigation:** The court did not address Mr. Ward's repeated, medically supported requests for extensions or stays due to his disabilities, nor did it consider whether reasonable accommodations were required to ensure Mr. Ward's access to the courts as a pro se litigant with disabilities.

**Material Evidence Excluded:** The court failed to consider Mr. Ward's unemployment documentation and appeal results, which were timely submitted and material to his ADA and FMLA claims, on the ground that they were not included in the pretrial order

**In summary:**

The district court's failure to consider these important grounds for relief deprived Mr. Ward of a full and fair adjudication of his ADA, FMLA, hostile work environment, failure to accommodate, and joint employer claims, as well as his right to reasonable accommodation in the litigation process.

## Do You Feel That There Are Any Other Reasons Why The District Court's Judgment Was Wrong? If So, What?

Yes, there are additional reasons why the district court's judgment was wrong. The cumulative effect of the court's procedural and substantive errors, including resolving disputed facts on summary judgment, excluding material evidence, and failing to accommodate Mr. Ward's disabilities, resulted in a fundamentally unfair process and deprived Mr. Ward of his right to a jury trial on genuine issues of material facts. The court did not adequately account for Mr. Ward's status as a pro se litigant with documented disabilities, which heightened the need for procedural fairness and reasonable accommodation. The court also failed to give appropriate weight to findings by the Kansas Department of Labor and unemployment proceedings, which corroborated Mr. Ward's protected status and contradicted the employer's stated reasons for termination. The court overlooked clear evidence of retaliatory motive, including the timing of adverse actions and the employer's shifting explanations. By limiting the scope of claims and evidence, and denying reasonable extensions or accommodation, the court prevented Mr. Ward from presenting the full factual and legal basis for his ADA and FMLA claims. Collectively, these errors denied Mr. Ward a fair opportunity to have his claims heard and decided on the merits, and warrant reversal.

## What Action Do You Want This Court To Take In Your Case?\

I respectfully request that the Court reverse the district court's grant of summary judgment in favor of the defendants on all claims, vacate the judgment entered against me, grant summary judgment in my favor and deny the defendants' motion for summary judgment, or, in the alternative, remand the case to the district court for trial on the merits of my ADA, FMLA, hostile

A-12 Appellant/Petitioner's Opening Brief – 12/16                    Page 29

work environment, failure to accommodate, and joint employer claims; direct the district court to consider all material evidence submitted in the summary judgment record, including my unemployment documentation and appeal results; instruct the district court to ensure that reasonable accommodation is provided for my documented disabilities during all further proceedings, as required by law, so that I have a fair and meaningful opportunity to present my case; and grant any other relief the Court deems just and proper.

**Do You Think The Court Should Hear Oral Argument In This Case?  If So, Why?**

I am fully committed to presenting my case as clearly and effectively as possible. Due to my documented disabilities—including severe anxiety, bipolar disorder, PTSD, and ADHD—I am significantly more effective and comfortable presenting my arguments in writing rather than through oral argument. While I recognize the importance of oral argument in some cases, I respectfully request that the Court decide this appeal on the written briefs and record, which I believe fully set forth the relevant facts and legal issues.

If the Court determines that oral argument would be helpful, I respectfully request that reasonable accommodations be provided to ensure I am able to participate meaningfully, consistent with my rights under the Americans with Disabilities Act.

8/1/2025

Date                                                                   Signature

A-12  Appellant/Petitioner's Opening Brief – 12/16                          **Page 30**

## CERTIFICATE OF SERVICE

I hereby certify that on ___August 1, 2025___ I sent a copy of
(date)

the Appellant/Petitioner's Opening Brief to __Timothy J. Davis, Sarah R. Holdmeyer__

__Tyler J. Briggs__ , at __Bryan Cave  Leighton Paisner LLP__

(Opposing Party or Attorney)

1200 Main Street Suite 3800 Kansas City, MO 64105 , the last known address/email

address, by ___Priority Mail USPS___ .
(state method of service)

___8/1/2025___

Date                                        Signature

## CERTIFICATE OF COMPLIANCE

I certify that the total number of pages I am submitting as my Appellant/Petitioner's Opening Brief is 30 pages or less or alternatively, if the total number of pages exceeds 30, I certify that I have counted the number of words and the total is   7,640   , which is less than 13,000. I understand that if my Appellant/Petitioner's Opening Brief exceeds 13,000 words, my brief may be stricken and the appeal dismissed.

___8/1/2025___

Date                                        Signature

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

# UNITED STATES | PRIORITY® MAIL

**UNITED STATES POSTAL SERVICE.**    *Retail*

**P**    **US POSTAGE PAID**

**$15.95**

Origin: 67060
08/01/25
1939710602-3

**PRIORITY MAIL®**

0 Lb 8.70 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 08/06/25

SHIP
TO:

DENVER CO 80257



**USPS SIGNATURE® TRACKING #**

9510 8118 1342 5213 6445 83



■ Exp...
■ Dom...
■ USF...
■ Limi...
■ Whe...

*Insura...
Domest...
** See I...

ns apply).*

international destinations.

required.

usions see the

limitations of coverage.

To schedule free Package Pickup,
scan the QR code.



**USPS.COM/PICKUP**



PAPER POUCH
how2recycle.info

Scanned by US Marshal

**FROM:**

William Ward
928 E. 52nd St S.
Wichita KS 67216

**TO:**

United States Court of Appeals
for the Tenth Circuit
Byron White United States
Courthouse.
1823 Stout Street
Denver, Colorado 80257

Attn: Clerk of Court
Christopher Wolpert

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

This package is made from post-consumer waste. Please recycle - again.