Case No. 25-3107

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

## WILLIAM OSCAR WARD
Plaintiff-Appellant

v.

## WESLEY MEDICAL CENTER, LLC, et al.
Defendant-Appellees

---

## BRIEF OF APPELLEES

---

Appeal from the United States District Court for the District of Kansas
Honorable Holly L. Teeter, United States District Judge
District Court Case No. 6:23-cv-01091-HLT

> Timothy J. Davis, KS # 24901
> Tyler Jerrad Blake Briggs, KS # 29409
> Bryan Cave Leighton Paisner LLP
> 1200 Main Street, Suite 3800
> Kansas City, MO 64105
> T: (816) 374-3200
> F: (816) 374-3300
> tim.davis@bclplaw.com
> tj.briggs@bclplaw.com
> *Attorneys for Defendants-Appellees*
>
> **Defendants Do Not Seek Oral Argument**

i

## DISCLOSURE STATEMENT UNDER RULE 26.1

Defendant-appellee HCA Healthcare, Inc. ("**HCA**") is a publicly-traded company.  Defendant Wesley Medical Center, LLC ("**Wesley**" or "**Wesley Medical Center**") is affiliated with HCA as an indirectly held subsidiary.

## TABLE OF CONTENTS

**JURISDICTIONAL STATEMENT** ……………………………………....…1

**STATEMENT OF THE ISSUES**……………………………………….…1

**STATEMENT OF THE CASE** ……………………………………....…2

**I.    Relevant Facts** ………………………………………..…2

**II.    Relevant Procedural History** …………………………………....7

**III.    Rulings Presented for Review** …………………………………11

**SUMMARY OF THE ARGUMENT** ……………………………………12

**SUMMARY JUDGMENT STANDARD** ………………………………13

**ARGUMENT** …………………………………………………………15

**I.    The District Court Correctly Granted Summary Judgment on Ward's Hostile Work Environment Claim Given There Is No Evidence of Causation or Severe or Pervasive Treatment** …………………………………………………………...15

**II.    The District Court Correctly Granted Summary Judgment on Ward's Retaliation Claims Given There is No Evidence of Causation, and Given Ward Did Not Engage in Protected Activity Under the ADA** …………………………………………………………...18

**III.    The District Court's Various Procedural Rulings Were Correct** ………………………………………………………...22

**CONCLUSION**……………………………………………..……28

**CERTIFICATE OF COMPLIANCE**…………………………………...……28

**DISTRICT COURT'S SUMMARY JUDGMENT ORDER** …………attached[1]

---

[1] Defendants attach the District Court's summary judgment order immediately following their brief, pursuant to Local Rule 28.2(A)(1) and 28.2(B).

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamson v. Multi Community Diversified Servs., Inc.*,
514 F.3d 1136 (10th Cir. 2008) ...................................................................16, 19

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*,
939 F.2d 887 (10th Cir. 1991) ...........................................................................14

*Bethscheider v. Westar Energy*,
820 Fed. App'x 749 (10th Cir. 2020) ......................................................23, 25, 27

*Boilermaker-Blacksmith Nat'l Pension Fund v. Gendron*,
67 F. Supp. 1250 (D. Kan. 1999)........................................................................25

*Buchanan v. Sherrill*,
51 F.3d 227 (10th Cir. 1995) ..............................................................................27

*Callahan v. Commun. Graphics, Inc.*,
657 F. App'x 739 (10th Cir. 2016) ......................................................................16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................................14

*Dannenberg v. Chater*,
105 F.3d 669, 1997 WL 4283 (10th Cir. 1997)...................................................26

*De Baca v. United States*,
399 F. Supp. 3d 1052 .........................................................................................25

*Dewitt v. S.W. Bell Tele. Co.*,
845 F.3d 1299 (10th Cir. 2017) ..........................................................................18

*Ewing v. Doubletree DTWC, LLC*,
673 F. App'x 808 (10th Cir. 2016)......................................................................16

*Foster v. Mt. Coal Co., LLC*,
830 F.3d 1178 (10th Cir. 2016) ..........................................................................19

*Geddes v. United Staffing All Emp. Med. Plan*,
469 F.3d 919 (10th Cir. 2006) ............................................................................25

*Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*,
  950 F.2d 665 (10th Cir. 1991) ...................................................................23

*In House Convenience, LLC v. United States*,
  2024 WL 57114611 (D.N.M. Feb. 14, 2024) ......................................................26

*Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*,
  257 F. Supp. 2d 1344 (D. Kan. 2003) .............................................................24

*Koch v. Koch Indus., Inc.*,
  203 F.3d 1202 (10th Cir. 2000) .................................................................23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...........................................................................14

*Moral v. Hagen*,
  No. 10-2595-KHV, 2013 WL 1660484 (D. Kan. April 17, 2013) ....................24

*Plotner v. AT&T Corp.*,
  224 F.3d 1161 (10th Cir. 2000) .................................................................25

*Proctor v. United Parcel Service*,
  502 F.3d 1200 (10th Cir. 2007) .................................................................20

*Ryder ex. Rel. Ryder v. Warrior*,
  810 F.3d 724 (10th Cir. 2016) ..................................................................27

*Schlecht v. Lockheed Martin Corp.*,
  626 F. App'x 775 (10th Cir. 2015) ..............................................................16

*Selenke v. Med. Imaging of Colo.*,
  248 F.3d 1249 (10th Cir. 2001) .................................................................20

*Spears v. City of Indianapolis*,
  74 F.3d 153 (7th Cir. 1996) ....................................................................27

*Tenbrink v. Fed. Home Loan Bank*,
  920 F. Supp. 1156 (D. Kan. 1996) ..............................................................15

*Thomas v. Int'l Bus. Machines*,
  48 F.3d 478 (10th Cir. 1995) ...................................................................14

v

*Thomas v. Wichita Coca-Cola Bottling Co.*,
   968 F.2d 1022 (10th Cir. 1992) ...............................................................14

*U.S. v. One Parcel of Real Property*,
   73 F.3d 1057 (10th Cir. 1996) ................................................................26

*United Steelworkers of Am. v. Oregon Steel Mills, Inc.*,
   322 F.3d 1222 (10th Cir. 2003) ..............................................................27

*White v. York Int'l Corp.*,
   45 F.3d 357 (10th Cir. 1995) ..................................................................14

*Wilson v. Muckala*,
   303 F.3d 1207 (10th Cir. 2002) ..............................................................23

**Statutes**

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1332 ...........................................................................................1

**Rules**

Fed. R. Civ. P. 56 .......................................................................................13

Fed. R. Civ. P. 56(c) ...................................................................................24

Rule 28(a)(4) .................................................................................................1

Rule 32(a)(7)(A) .........................................................................................28

Rule 32(g)(1) ...............................................................................................28

## JURISDICTIONAL STATEMENT UNDER RULE 28(a)(4)

(A) The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, given that Ward asserted claims under federal law (the Americans with Disabilities Act, as amended (the "**ADA**"), and the Family Medical Leave Act (the "**FMLA**")).

(B) The Court of Appeals has appellate jurisdiction pursuant to 28 U.S.C. § 1291, given this is an appeal from a final decision of the District Court.

(C) Ward timely filed his notice of appeal given the District Court's judgment was entered on May 29, 2025, and Ward filed his notice of appeal 29 days later, on June 18, 2025.

(D) This appeal is from the District Court's final order and judgment granting Defendants' summary judgment in full, which disposed of all the parties' claims.

## STATEMENT OF THE ISSUES

1.     Was the District Court correct to grant Defendants summary judgment on Ward's ADA harassment claim given there is no evidence linking the alleged harassment to his disability, and given there is no evidence of severe or pervasive conduct?

2.     Was the District Court correct to grant Defendants summary judgment on Ward's retaliation claims under the ADA and the FMLA, given there is no

1

evidence linking Ward's termination to his leave requests or any other protected activity, and given Ward did not engage in any protected activity under the ADA?

3.    Did the District Court correctly exercise its broad discretion in ruling on various procedural issues, including (a) limiting Ward's claims to those asserted in the Pretrial Order, (b) declining to consider untimely evidence submitted in Ward's summary-judgment reply brief, and (c) declining to give additional stays and extensions over and above the substantial extra time Ward was already given?

**STATEMENT OF THE CASE**

**I.    RELEVANT FACTS.**

**A.    Introduction.**

Ward's grievances have nothing to do with any alleged discrimination. They originate from a workplace dispute relating to the creation of a modified shop-vac that was used to clean overhead fire sprinklers at Wesley Medical Center. Ward—who helped put this device together using company time and resources—claims he "invented" the device, and he became upset with some of his coworkers and supervisors when he felt he was not receiving due credit for his involvement. He thereafter sought and was granted all leave he requested, but he never returned to work or even communicated with Wesley after his leave time expired, leading to the termination of his employment for job abandonment.

These facts, as described in more detail below, are undisputed not only because the evidence shows they are, but also because the District Court ruled that Ward failed to properly controvert them in his briefing—a ruling that Ward does not challenge on appeal. (ROA, Vol. I, at 961; *see also id.*, at 186–190 (Defendants' separately numbered fact statements, with citations to the record).)

**B.    Ward's Issues at Work.**

Wesley Medical Center is a hospital located in Wichita, Kansas. (ROA, Vol. I, at 166.) HCA is a holding company with no employees or operational activities aside from serving as a holding company whose affiliates own and operate hospitals, including Wesley Medical Center.[2] (*Id.*, at 227–29.) Wesley hired Ward as a Maintenance Mechanic on or about March 23, 2020. (*Id.*, at 166.) Wesley was responsible for hiring, paying, supervising, and controlling Ward's working conditions. (*Id.*, at 166, 221, 288, 292–293.)

In March 2021, Ward filed a series of complaints relating to a device he claims to have invented at work to clean sprinkler heads. (ROA, Vol. I, at 213.) These complaints related to Ward's belief that Brian Leabo (Director of Facilities

---

[2] Though HCA submits the undisputed facts show it was not Ward's employer, the District Court did not reach that issue, so HCA does not raise it here. But given HCA was not Ward's employer, Defendants' brief will mostly refer to and discuss Wesley. As the District Court rightly recognized, if Ward's claims fail substantively (which they do), they fail as to both Wesley and HCA, regardless of who the true employer is.

Management for Wesley) and Darrell Boger (Refrigeration Tech for Wesley) were not providing sufficient recognition or credit to Ward for his work in assembling the device. (*Id.*, at 213.)  More specifically:

- On March 17, 2021, Ward made a complaint to Wesley's Human Resources Business Partner Amanda Miller pertaining to his belief that another employee was trying to take credit for what Ward believed was his "invention."  (*Id.*, at 166, 207–08, 214–15.)

- On March 22, 2021, Ward made a complaint to Lisa Clark—VP of HR for Wesley—also pertaining to his belief that another employee was trying to take credit for his "invention."  (*Id.*, at 209, 218.)

- On or about March 19 and March 24, 2021, Ward made complaints to Shane Wanner, Leabo's supervisor, also pertaining to Ward's belief that another employee was trying to take credit for his "invention."  (*Id.*, at 209, 217.)

- On March 31, 2021, Ward made a phone call to two Ethics & Compliance Case Managers, Brad Fister and Thomas Cook, also pertaining to his belief that another employee was trying to take credit for his "invention."  (*Id.*, at 212.)

Wesley conducted an investigation into Ward's complaints and could not substantiate any improper conduct.  (*Id.*, at 258.)

## C.    Ward's Requests for Leaves of Absence.

At Wesley, leaves of absence are administered by Time Away From Work ("**TAFW**"), Wesley's third-party leave administrator.    (ROA, Vol. I, at 253.) Through TAFW, Wesley only receives information regarding an employee's request for leave, whether that request is approved or denied and, if approved, for how long, and when the employee is released to return to work. (*Id.*, at 253.)

On April 15, 2021, Ward attended his first appointment with his medical provider, Dr. Joshua Wigdahl of Tanglewood Family Medical Center, for anxiety. (*Id.*, at 167.)  On April 19, 2021, Ward contacted TAFW and requested leave under the FMLA. (*Id.*, at 167.)  Ward requested leave beginning April 12, 2021 through April 20, 2021, which was approved by TAFW.  (*Id.*, at 261.)   Ward thereafter requested an extension of his leave through May 2, 2021, which was approved, and his provider stated he was able to return to work on May 3, 2021. (*Id.*, at 167, 265.)

Ward did not return to work on May 3, 2021, however. (*Id.*, at 167.)  On May 5, 2021, Clark contacted Ward via email and requested that he report to Human Resources for a meeting. (*Id.*, at 167.)  On May 7, 2021, Clark contacted Ward via email once again and requested Ward meet with her on May 10, 2021, at 7:00 a.m. (*Id.*, at 167.)   Clark also informed Ward that his failure to report to this meeting would be considered a separation of employment. (*Id.*, at 167.)  Ward responded to Clark's May 7, 2021 email that same date and told Clark his new return to work date

5

was May 24, 2021. (*Id.*, at 168.)  On May 12, 2021, Clark contacted Ward via email and stated she had not received any documentation supporting a request for leave beyond May 3, 2021 and requested Ward meet with her on May 14, 2021. (*Id.*, at 168.)

Thereafter, Clark learned Ward had submitted documentation to TAFW seeking an extension of his leave beyond May 3, 2021 through May 24, 2021. (ROA, Vol. I, at 254–55.)  Because of this update, Clark did not expect Ward to report to work prior to May 24, 2021, the parties did not meet on May 14, 2021, and Ward received no communication from Clark or anyone at Wesley between May 12, 2021 and July 7, 2021 stating or suggesting his employment had been terminated. (*Id.*, at 168.)

Throughout the month of May 2021, Ward continued to communicate with TAFW regarding his extension request. (*Id.*, at 267–74.)  On May 24, 2021, Ward informed TAFW that his therapist was filling out a new form covering the extension of his leave beyond May 3, 2021, up through May 24, 2021. (*Id.*, at 276–77.)

On May 26, 2021, Ward's request for FMLA leave from April 22, 2021 through May 23, 2021 was approved by TAFW. (*Id.*, at 279.)  In a letter sent to Ward approving his leave, TAFW stated, "If your leave request is for your serious health condition and you would like to discuss an accommodation in addition to this request for leave, please contact your facility's Human Resource department as soon as

possible." (*Id.*, at 280.)  But Ward never contacted Human resources, nor did he seek any further leave through TAFW, nor did he ever return to work following the conclusion of his approved leave on May 23, 2021.  (*Id.*, at 219–20.)

Ward admits that he was not denied FMLA leave and that he received all the FMLA leave he requested.  (*Id.*, at 220.)

### D.    Ward's Termination for Job Abandonment.

On July 7, 2021, twelve weeks after Ward initially began his leave of absence and having not heard from Ward since early May, Clark contacted Ward via email instructing him to contact her by July 12, 2021 to discuss his employment.  (ROA, Vol. I, at 283.)  She further informed Ward if she did not hear from him, she would move forward with administratively separating his employment.  (*Id.*, at 283.)  On July 15, 2021, having not heard from Ward, Clark emailed him and informed him that his employment with Wesley had been terminated effective July 15, 2021 for job abandonment.  (*Id.*, at 169.)

## II.    RELEVANT PROCEDURAL HISTORY.

Ward filed his complaint with the District Court on May 12, 2023, asserting claims for discrimination and retaliation under the ADA and the FMLA.  (ROA, Vol. I, at 20–30.)  Following a scheduling conference with the parties, Magistrate Judge Brooks Severson entered a scheduling order on September 18, 2023, giving the parties until March 5, 2024 to complete discovery.  (*Id.*, at 4.)

After engaging in written discovery, Defendants sought Ward's deposition. The parties agreed to hold the deposition on April 9, 2024, and Defendants agreed to take it via Zoom to help alleviate Ward's expressed anxiety regarding the deposition. (ROA, Vol. I, at 8.) Not long into the deposition, Ward left the deposition and did not return, alleging he was suffering from mental health issues. (*Id.*, at 10.) Thereafter, on April 20, 2024, Ward moved the District Court to stay the litigation given these anxiety-related issues. (*Id.*, at 8.) Following a telephonic hearing with the parties on May 16, 2024, Magistrate Judge Severson stayed the litigation for 30 days so that Ward could "work on his mental health and to manage side effects of medication," and set a follow-up status conference for June 20, 2024. (*Id.*, at 10–11.) Just prior to the follow-up conference, Ward filed a motion to extend the stay of the litigation by another 90 days. (*Id.*, at 11.) Magistrate Judge Severson heard this request during the June 20, 2024 status conference, and the Judge extended the stay another 30 days, directing the parties to consider, in light of Ward's health issues, a potential agreement to dismiss the litigation without prejudice and to consider potential mediation as another means of resolution. (*Id.*, at 11.)

Magistrate Judge Severson held an additional telephonic status conference on July 23, 2024, at which time the Judge permitted the parties an additional week to try to reach an agreement to dismiss the litigation without prejudice. (*Id.*, at 12.) Magistrate Judge Severson then held an additional telephonic status conference on

August 6, 2024, and directed the parties to either submit a stipulation of dismissal without prejudice or an agreed scheduling order by August 13, 2024. (*Id.*, at 12.) After receiving proposals from the parties, Magistrate Judge Severson thereafter entered a revised scheduling order on August 21, 2024, providing the parties until October 31, 2024 to complete the remaining discovery (which was expressly limited to three outstanding depositions, including Ward's deposition). (*Id.*, at 12, 13.) Magistrate Judge Severson also directed that Ward's deposition be completed in her courtroom, in her presence, to make Ward more comfortable with the process, and the deposition was completed without issue on September 19, 2024. (*Id.*, at 10, 14.) Three weeks after the close of discovery, Ward moved for a 60-day extension of the discovery deadline, which Magistrate Judge Severson denied because, among other reasons, the motion was not timely filed. (*Id.*, at 15.)

The parties then worked together to draft a Pretrial Order, and, after an in-person hearing with Magistrate Judge Severson and both parties to discuss various edits to the Pretrial Order, the Pretrial Order was finalized and entered on January 2, 2025. (ROA, Vol. I, at 16.) In the Pretrial Order, Ward asserted four counts, which, as the District Court correctly noted, are really just three claims given counts three and four are essentially the same: (1) disability harassment in violation of the ADA,

9

(2) retaliation in violation of the ADA, and (3) and retaliation in violation of the FMLA.[3]  (*Id.*, at 176.)

Following entry of the Pretrial Order, Ward moved for several extensions of the dispositive motion deadline, which District Judge Teeter mostly granted, providing both sides approximately 40 extra days to complete and file their motions, up through February 24, 2025.  (*Id.*, at 16–17.)  At Ward's request, District Judge Teeter also granted both sides 10 extra pages for their opening summary-judgment briefs.  (*Id.*, at 17.)

Both Defendants and Ward filed cross-motions for summary-judgment on February 24, 2025.  (ROA, Vol. I, at 17.)  On February 25, 2025, Defendants provided Ward with the District Court's required notice to pro se litigants regarding the procedure for opposing summary judgment, which emphasizes how pro se litigants must seek to controvert any facts set forth in the opposing party's motion.  (*Id.*, at 18.)  The motions were fully briefed as of April 4, 2025.  (*Id.*, at 19.)

On May 20, 2025, the District Court granted Defendants' motion for summary judgment, disposing of all of Ward's claims.  (*Id.*, at 954–70.)  The District Court also denied Ward's own motion for summary judgment.  (*Id.*, at 970.)  The District

---

[3] In the Pretrial Order, Ward characterized this last claim as both as "FMLA Enforcement" and "FMLA retaliation."  But as the District Court noted, the theory on both is essentially the same: that Ward was purportedly mistreated for taking FMLA leave.  (ROA, Vol. I, at 962 n. 8.)

Court entered judgment in Defendants' favor on that same date, May 20, 2025. (*Id.*, at 971.) Ward filed his notice of appeal 29 days later, on June 18, 2025. (*Id.*, at 972.)

## III.    RULINGS PRESENTED FOR REVIEW.

On appeal, Ward primarily attacks the District Court's award of summary judgment in Defendants' favor. The District Court's primary reasoning in granting Defendants' summary judgment is that no reasonable jury could find a causal connection between Ward's alleged harassment and his disability, or between Ward's termination (or any other adverse action) and his requests for FMLA leave. (ROA, Vol. I, at 962–63.) Meaning, both Ward's hostile work environment claim and his retaliation claims fail as a matter of law on the causation element.

Additionally, the District Court ruled there was no evidence of any severe or pervasive treatment sufficient to rise to the level of a hostile work environment, and this was another reason Ward's hostile work environment claim failed. (*Id.*, at 964–65.) Further, the District Court ruled that Ward did not engage in any protected activity under the ADA—*i.e.*, he did not make a complaint of disability discrimination or seek accommodation—and this too negates his ADA retaliation claim.

Ward's appeal also takes issue with some of Magistrate Judge Severson's and District Judge Teeter's procedural rulings. Specifically, Ward takes issue with District Judge Teeter's refusal to let him go beyond the claims he asserted in the

Pretrial Order and refusal to let him fix shortcomings in his opening summary-judgment brief by way of his reply brief. (*Id.*, at 958–61.) Further, Ward takes issue with Magistrate Judge Severson declining to issue further stays of the litigation (*Id.*, at 11), and he vaguely suggests he should have been given more extensions of time.

## SUMMARY OF THE ARGUMENT

First, the District Court correctly granted Defendants summary judgment on Ward's claim for disability harassment. Ward presented no evidence whatsoever connecting the alleged harassing behavior to his disability. To the contrary, Ward's own repeated written complaints made clear the issues he was having at work related to his feeling that he was not getting due credit for "inventing" a device used to clean overhead sprinklers—nothing at all related to disability. Further, the alleged harassing treatment—coworkers taking credit for his "invention," not receiving an "All-Star" award, Wesley finding his complaints unsubstantiated, and someone allegedly tampering with his belongings—do not rise to the severe or pervasive level required to show a hostile work environment.

Second, the District Court correctly granted Defendants summary judgment on Ward's claims for retaliation under the ADA and the FMLA. Ward presented no evidence connecting his termination to his request for FMLA leave or any protected activity under the ADA. Wesley gave him all the leave he asked for and even six weeks extra, belying any suggestion that Wesley was eager to get rid of him

following his requests for leave.  Likewise, Wesley reached out to him and invited him to report back to work multiple times, but Ward ignored these requests.  Wesley thus has a legitimate explanation for his termination—job abandonment—and there is no evidence to suggest that explanation was pretextual (*i.e.*, no shifting explanations for his termination).  Moreover, as to his ADA retaliation claim, there is no evidence of protected activity: Ward never lodged a complaint of disability discrimination (all of his written complaints related to his "invention"), and he never sought an accommodation.

Third, and finally, Ward's smattering of challenges regarding some of the District Court's procedural rulings fail, including the District Court (a) holding him to his assertions in the Pretrial Order, (b) declining to consider untimely evidence submitted with a reply brief, and (c) declining to give Ward additional stays and extensions over and above the generous time he was already given in the litigation below.  These are decisions over which the District Court has broad discretion, and Ward has not shown an abuse of that discretion.

The District Court's judgment in Defendants' favor should be affirmed in full.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, [the] answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party's initial burden is to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co*., 968 F.2d 1022, 1024 (10th Cir. 1992).

If that burden is met, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986). The opposing party's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *id.* at 586; rather, it requires "'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.'" *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 484 (10th Cir. 1995) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991)). Indeed, although the court views the evidence of record and draws all reasonable inferences in the light most favorable to the party opposing the motion, *id*. at 484, "conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." *White v. York Int'l Corp*., 45 F.3d 357, 363 (10th Cir. 1995).

In applying these standards, the Court should bear in mind that summary judgment is <u>not</u> "a disfavored procedural shortcut," but "an important procedure designed to secure the just, speedy and inexpensive determination of every action."

14

*Tenbrink v. Fed. Home Loan Bank*, 920 F. Supp. 1156, 1159 (D. Kan. 1996) (internal quotations and citations omitted).

## ARGUMENT

I. **THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON WARD'S HOSTILE WORK ENVIRONMENT CLAIM GIVEN THERE IS NO EVIDENCE OF CAUSATION OR SEVERE OR PERVASIVE TREATMENT.**

On appeal, Ward fails to substantively address the two central bases of the District Court's ruling: that there was no evidence to connect Ward's alleged treatment to his disability, and that there was no evidence to show any treatment he received was severe or pervasive. He merely offers conclusory statements such as the "harassment escalated after Mr. Ward disclosed his disability," and "[c]oworkers and management targeted him for his . . . disability status." (Brief, p. 16.) But he does not explain what actions supposedly occurred after he disclosed his disability, nor what sort of actions constitute the "targeting" and why this was connected to his disability. The District Court's ruling was correct and should be affirmed. (ROA, Vol I, at 963–65.)

The elements of an ADA harassment claim are: "(1) the plaintiff is a member of a protected group (*i.e.*, he is 'disabled' as defined by the ADA); (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on the alleged disability; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an

15

abusive working environment." *Callahan v. Commun. Graphics, Inc.*, 657 F. App'x 739, 746-47 (10th Cir. 2016).

To survive summary judgment, a plaintiff must present admissible evidence of material facts showing harassment *because of* a disability. *See Ewing v. Doubletree DTWC, LLC*, 673 F. App'x 808, 814 (10th Cir. 2016) ("'[C]onclusory statements unsupported by examples' do not suffice to create a genuine issue of material fact."); *Callahan*, 657 App'x at 747 ("[M]ere allegations without supporting evidence are not sufficient to survive summary judgment."); *Schlecht v. Lockheed Martin Corp.*, 626 F. App'x 775, 779 (10th Cir. 2015) ("To oppose summary judgment, [pro se plaintiff] was required to do more than provide h[is] conclusory assertions or subjective interpretation of the evidence;[]he was required to present admissible evidence of material fact."). This Court reviews the District Court's grant of summary judgment using a "de novo" standard of review, "applying the same standard as the district court." *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

Here, as the District Court correctly ruled, Ward's claim fails on the causation element because he has "no evidence that his anxiety disorder . . . [was] the reason he suffered any mistreatment." (ROA, Vol. I, at 963.) The alleged mistreatment that Ward attempts to couch as harassment stems from a workplace dispute relating to the creation of a device that was used to clean overhead fire sprinklers at Wesley's

16

facility. As virtually every one of his complaints to HR and others makes clear, the dispute arose from Ward's belief that he invented the device but did not receive proper recognition or credit. The underlying facts of this workplace dispute are irrelevant to any alleged disability. Indeed, the dispute predates Ward seeking medical treatment for the alleged disability and requesting leave. There is simply no evidence that any treatment of Ward had anything whatsoever to do with his disability.

Moreover, the treatment Ward now attempts to couch as "harassment" or a "hostile work environment"—even if accepted as true—does not rise to an actionable level. This alleged treatment includes Wesley failing to address Ward's complaints related to invention of the sprinkler cleaner, someone allegedly tampering with his personal belongings, and not receiving an "All-Star" awarded that he was initially told he would get. As the District Court correctly ruled, these "few isolated incidents . . . fall short of conduct so pervasive or severe as to alter employment conditions." (ROA, Vol. I, at 965.) Ward's Brief offers nothing to show otherwise—indeed, he simply offers the conclusory statement: "The conduct was ongoing and not isolated, affected Mr. Ward's mental health and contributing to his need for leave and eventual termination." (Brief, p. 16.) These are the very type of vague, unsupported assertions that this Court has said will not do.

The Court should affirm the District Court's summary judgment ruling disposing of Ward's claim for hostile work environment based on disability.

**II.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON WARD'S RETALIATION CLAIMS GIVEN THERE IS NO EVIDENCE OF CAUSATION, AND GIVEN WARD DID NOT ENGAGE IN PROTECTED ACTIVITY UNDER THE ADA.**

As with his disability claim, Ward also fails to substantively grapple with the District Court's ruling on his retaliation claims, which focused principally on the lack of causation between any alleged retaliatory conduct and any protected status, thus negating an essential element of Ward's retaliation claims under the FMLA and ADA. Ward again only offers broad-brush conclusions, suggesting that the "timing of Mr. Ward's termination, closely following his exercise of FMLA rights, supports an inference of retaliation," without explaining what the timeline actually shows. Again, the District Court got this issue right, and should be affirmed. (ROA, Vol. I, at 965–69.)

An FMLA retaliation claim requires evidence that: (1) plaintiff engaged in protected activity; (2) defendant took some action a reasonable employee would have found materially adverse; and (3) plaintiff's protected activity and defendant's action are causally connected. *Dewitt v. S.W. Bell Tele. Co.*, 845 F.3d 1299, 1318–19 (10th Cir. 2017). Similarly, an ADA retaliation claim requires Ward to "prove (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there

was a causal connection between the protected activity and the adverse employment action." *Foster v. Mt. Coal Co., LLC*, 830 F.3d 1178, 1187 (10th Cir. 2016).  As noted, the Court reviews the District Court's grant of summary judgment de novo. *Adamson*, 514 F.3d at 1145.

Given Ward's retaliation claims are circumstantial and lack any direct evidence, the District Court correctly applied the *McDonnell Douglas* burden-shifting framework in assessing whether Ward's claims could survive summary judgment, requiring Ward to first show a *prima facie* case before the burden could shift to Wesley to provide a legitimate reason for termination.  The District Court correctly ruled that Ward could not make out a *prima facie* case.  As with his disability claim, there is no evidence connecting his FMLA requests or any alleged protected activity under the ADA to his termination.  As to his FMLA leave, the District Court correctly noted that the undisputed evidence showed:

> Clark waited a total of twelve weeks after [Plaintiff's] leave was first approved to terminate his employment.  She then gave him one last chance to contact her.  Plaintiff did not.  For the last six weeks, Plaintiff had remained out of the office without having updated leave approval.  No reasonable juror could conclude based on this evidence that Plaintiff was terminated for any reason other than job abandonment.

(Order, p. 14.)  In other words, the undisputed facts showed that Wesley Medical Center was not champing at the bit to rid itself of Ward after he sought FMLA leave—just the opposite, it gave him multiple chances and invitations to return, and waited weeks beyond his approved leave before severing his employment.

19

As for any supposed connection between his termination and any alleged protected activity under the ADA, again the undisputed evidence shows there could be no such connection.  According to Ward's own theory of the case, his termination was somehow connected to his leave.  But nothing about Ward's generic request for leave through Wesley's third-party leave administrator could have or should have put Wesley on notice that he was seeking accommodation for an alleged disability.  Indeed, TAFW did not even share the reason the leave had been requested with Wesley and made clear in a letter sent to Ward that if he "would like to discuss an accommodation in addition to this request for leave, please contact your facility's Human Resource department as soon as possible." Ward never did so.  In short, Wesley had no awareness that anything about Ward's leave was connected to his disability, and so the notion that his termination following exhaustion of leave time somehow connects to his disability does not add up.

The holes in Ward's *prima facie* case do not stop there.  The District Court rightly recognized that there is no evidence to support a prime facie case on the "protected activity" element.  (ROA, Vol. I, at 968.)  The ADA recognizes two types of protected activity: (i) complaining about disability discrimination, and (ii) seeking accommodations for an alleged disability.  *Proctor v. United Parcel Service*, 502 F.3d 1200, 1208 (10th Cir. 2007) (complaints); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1265 (10th Cir. 2001) (requests for accommodation).  Ward's flurry

20

of complaints all related to his concern that he was not getting due credit for a sprinkler cleaner he helped build. They had nothing to do with disability or any mistreatment based on disability. Likewise, Ward never requested any accommodation for his disability. Again—the notice from TAFW approving his leave expressly informed him to reach out to Wesley if he needed an accommodation, and he never did.

Even assuming Ward had enough to shift the burden to Wesley under *McDonnell Douglas*, Wesley has a legitimate, non-discriminatory reason for Ward's termination. Ward was out on leave more than 6 weeks beyond his approved leave time, and he did not respond to multiple requests that he contact Wesley to discuss his employment status and return to work. As the District Court correctly ruled, "[n]o reasonable juror could conclude based on this evidence that [Ward] was terminated for any reason other than job abandonment." (ROA, Vol. I, at 967.)

This legitimate, non-discriminatory reason for his termination shifts the burden back to Ward to show that Wesley's reason is pretextual. On that score, Ward again has nothing. Ward's brief suggests that there is evidence of pretext because he had "provided timely medical documentation and notice of return" prior to his termination. But Ward does not explain what he is referring to, and the undisputed evidence is: his approved leave expired May 24, 2021; he never provided any further medical documentation or otherwise requested leave thereafter; and he never

21

responded to multiple inquiries in July (more than 6 weeks after his approved leave ended) about returning to work. Indeed, Ward admitted in his deposition that he was given all leave he requested, belying the vague suggestion in his brief that Wesley purportedly acted too hastily in ending his employment.

The Court should affirm the District Court's grant of summary judgment on Ward's claims for retaliation under the ADA and FMLA.

## III.   THE DISTRICT COURT'S VARIOUS PROCEDURAL RULINGS WERE CORRECT.

### A.   The District Court Correctly Limited Ward to the Claims Asserted in the Pretrial Order.

Ward suggests on appeal that the "district court erred or abused its discretion by limiting the scope of [his] claims and evidence to those specifically listed in the pretrial order." (Brief, p. 22.) Ward does not articulate what claims were excluded on this basis, but presumably he is referring to the District Court's ruling that Ward's attempt to brief "two additional purported claims—one for failure to accommodate and one for FMLA interference"—was improper because those claims were "not delineated in the pretrial order." (ROA, Vol. I, at 959.) As the District Court explained, "nothing in the pretrial order (even liberally construed) notified Defendants or the Court that he meant to include an ADA failure-to-accommodate claim or an FMLA interference claims." (*Id.*, at 960.) The District Court was correct in declining to consider these unasserted claims. (*Id.*, at 958–60.)

22

The "pretrial order defines the scope of an action for trial." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000). Any "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). "A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment." *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991). The District Court "has the discretion to exclude from trial those issues and claims not found in the pretrial order." *Id.* On appeal, this Court reviews the District Court's decision to exclude claims not asserted in the pretrial order for abuse of discretion. *Koch*, 203 F.3d at 1219. Meaning, the District Court's decision should be upheld absent a showing that its decision was "arbitrary, capricious, or whimsical." *Bethscheider v. Westar Energy*, 820 Fed. App'x 749, 751 (10th Cir. 2020) (citation omitted).

Here, Ward offers no explanation as to why the District Court's exclusion of claims not asserted in the Pretrial Order was supposedly "arbitrary, capricious, or whimsical." And there is nothing to support any such argument. Ward attempted to change the nature of his claims only after seeing Defendants' summary judgment brief. This is the very sort of moving target that the pretrial-order process is meant

to foreclose. *Moral v. Hagen*, No. 10-2595-KHV, 2013 WL 1660484, at \*7–8 (D. Kan. April 17, 2013).

The Court should affirm the District Court's decision to exclude Ward's unasserted ADA failure-to-accommodate and FMLA interference claims.

**B.      The District Court Correctly Declined Consideration of Additional Evidence Submitted in Ward's Reply Brief in Support of His Own Motion for Summary Judgment (the Denial of Which He Has Not Challenged on Appeal).**

Ward also argues on appeal that the District Court erred by "disregarding evidence submitted [by Ward] in reply briefing." (Brief, p. 22.) As the District Court explained, this issue related to Ward's own cross-motion for summary judgment, and his failure to set out "separately numbered" facts and "support them as required by Fed. R. Civ. P. 56(c)" in his opening brief, which he then "tried to correct . . . in his reply brief." (ROA, Vol. I, at 960–61.) As an initial matter, Ward has not appealed the District Court's denial of his own motion for summary judgment. So, whether the District Court acted properly in declining to consider evidence submitted on reply in connection with that motion is moot. In any event, the District Court was correct in declining to consider the untimely evidence submitted in Ward's reply brief. (*Id.*, at 960–61.)

"Generally, a party is prohibited from raising new arguments and issues in a reply brief, and a court should not consider issues first raised in a reply brief." *Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*, 257 F. Supp. 2d 1344, 1351 n.7 (D.

24

Kan. 2003) (citing *Boilermaker-Blacksmith Nat'l Pension Fund v. Gendron*, 67 F. Supp. 1250 (D. Kan. 1999) and *Plotner v. AT&T Corp.*, 224 F.3d 1161 (10th Cir. 2000)).   Whether to permit this sort of improper briefing is a "supervision of litigation" question that the "Tenth Circuit reviews for abuse of discretion." *De Baca v. United States*, 399 F. Supp. 3d 1052, 1182 (citing *Geddes v. United Staffing All Emp. Med. Plan*, 469 F.3d 919 (10th Cir. 2006)).  As noted above, abuse of discretion requires a showing that the District Court acted in an "arbitrary, capricious, or whimsical" manner.  *Bethscheider*, 820 Fed. App'x at 751 (citation omitted).

Here, Ward has not explained how the District Court purportedly abused its discretion in declining to consider the improper new evidence in his reply brief.  No such abuse occurred: as the District Court noted, at the outset of summary judgment briefing, Ward was given ample instruction and warning about precisely how he needed to support any factual contentions.  (*See* ROA, Vol. I, at 961.)  In any event, as the District Court also explained, the additional evidence submitted with Ward's reply brief would make no difference to the summary-judgment analysis anyhow. (*See id.*, at 961 n. 7.)

The Court should affirm the District Court's decision to decline consideration of Ward's late evidence submitted on reply.

**C.** **The District Court Did Not Abuse Its Discretion in Denying Ward Additional Extensions of Time or Stays of the Litigation.**

Lastly, Ward argues that "the district court abused its discretion by denying Mr. Ward's motions for stay or extension of deadlines due to his documented disabilities and medical provider recommendations, thereby depriving Mr. Ward of a fair opportunity to litigate his claims." (Brief, p. 20.) As an initial matter, it was Magistrate Judge Severson that ruled on Ward's repeated requests for stays of the litigation, and Ward never lodged objections to those rulings to seek review by the District Court. Thus, any challenges to Magistrate Judge Severson's orders with respect to staying the litigation have been waived. *See Dannenberg v. Chater*, 105 F.3d 669, 1997 WL 4283, at *1–2 (10th Cir. 1997) ("[T]he failure to file a proper objection to the magistrate judge's report waives appellate review."); *U.S. v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) (same). In any event, both Magistrate Judge Severson's rulings on Ward's requests for stays, and District Judge Teeter's rulings on Ward's requests for extension, were thoughtful and correct. (ROA, Vol. I, at 11, 16–17.)

In determining whether to stay litigation, a district courts should consider, among other factors, "whether the movant will suffer irreparable harm," and the "litigant's interests in proceeding expeditiously with the civil action and the potential prejudice to the opposing party of a delay, the burden on the litigants, and the convenience to the court." *In House Convenience, LLC v. United States*, 2024 WL

57114611, at *1 (D.N.M. Feb. 14, 2024) (citing *United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222 (10th Cir. 2003), among other cases). In determining whether to grant extension requests, a district court should consider whether there have been previous requests for extension and the reasoning for the requested extension, including whether the circumstances necessitating the extension are within the movant's control. *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). The Court reviews the denial of an extension request for "abuse of discretion." *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995). Likewise, whether "to stay a case generally is a matter left to the sound discretion of the trial court." *Ryder ex. Rel. Ryder v. Warrior*, 810 F.3d 724, 736 (10th Cir. 2016). Again, overturning an exercise of that discretion would require a showing that the District Court acted in an "arbitrary, capricious, or whimsical" manner. *Bethscheider*, 820 Fed. App'x at 751 (citation omitted).

Here, Ward has not identified which stay or extension requests he claims were improperly denied, nor has he articulated why any such denials supposedly constituted an abuse of the District Court's discretion. And in fact, the District Court (both Magistrate Judge Severson and District Judge Teeter) was generous in its dealings with Ward, staying the litigation for several months so he could deal with his health issues, and granting roughly 40 days' worth of extensions on his summary judgment briefing.

The Court should affirm the District Court's rulings on Ward's requests for stays and extensions of time.

## CONCLUSION

For these reasons, Defendants request that this Court affirm the District Court's judgment in full.

Dated: September 17, 2025

Respectfully submitted,

/s/ *Timothy J. Davis*
Timothy J. Davis, KS # 24901
Tyler Jerrad Blake Briggs, KS #29409
Bryan Cave Leighton Paisner LLP
1200 Main Street, Suite 3800
Kansas City, MO 64105
T: (816) 374-3200
F: (816) 374-3300
tim.davis@bclplaw.com
tj.briggs@bclplaw.com
*Attorneys for Defendant-Appellees*

## CERTIFICATE OF COMPLIANCE UNDER RULE 32(g)(1)

The undersigned counsel certifies that the foregoing brief complies with the type-volume limitation given, pursuant to Rule 32(a)(7)(A), it contains less than 30 pages.

/s/ *Timothy J. Davis*
Counsel for Defendant-Appellees

28

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM OSCAR WARD,

      **Plaintiff,**

      **v.**                      **Case No. 6:23-cv-01091-HLT**

WESLEY MEDICAL CENTER, LLC
and HCA HEALTHCARE, INC.,

      **Defendants.**

## MEMORANDUM AND ORDER

This is an employment dispute between Plaintiff William Oscar Ward and his former employer, Defendant Wesley Medical Center, LLC. The triggering event seems to be Plaintiff's invention of a workplace tool to clean sprinkler heads. Plaintiff alleges that others tried to steal credit for his invention.[1] Plaintiff's ensuing treatment exacerbated his anxiety. Plaintiff took medical leave approved under the Family and Medical Leave Act (FMLA) and never returned to the workplace.

Plaintiff filed this action pro se[2] against his former employer (Wesley) and Wesley's holding company (HCA Healthcare, Inc.).[3] He asserts claims for disability-based harassment and retaliation. He also asserts a claim under the FMLA for retaliation and "enforcement."

---

[1]   Plaintiff indicates that he wants to preserve any claim for misappropriation of intellectual property and conversion in a separate legal action. Doc. 157 at 45. Patent law is beyond the scope of this Memorandum and Order.

[2]   The Court liberally construes Plaintiff's pro se filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id*.

[3]   This Memorandum and Order often refers to Wesley as the defendant, although both Wesley and HCA are named. Plaintiff extensively argues that HCA is responsible for any adverse action taken against him. The nature of the entities' relationship also seems to be at the heart of discovery disputes in the case. *See, e.g.*, Docs. 131, 157 at 45-47. Nevertheless, the Court does not need to address the entities' relationship because no reasonable jury could find for Plaintiff on his claims.

The parties filed cross-motions for summary judgment. Docs. 156, 157. The Court grants Defendants' motion and denies Plaintiff's motion because no reasonable jury could find a causal connection between Plaintiff's anxiety or protected medical leave and a hostile work environment or his termination. There are other problems with Plaintiff's claims, but the lack of a causal connection is one dispositive flaw that impacts everything.

## I.    BACKGROUND[4]

Wesley hired Plaintiff as a Maintenance Mechanic in March 2020. Wesley is a hospital in Wichita, Kansas. HCA is a holding company. Its affiliates own and operate hospitals, including Wesley.

Lisa Clark was Wesley's Vice President of Human Resources. Brian Leabo was the Director of Facilities Management. Darrell Boger was a Refrigeration Tech.

Plaintiff claims that he invented a device to clean sprinkler heads at work. But he believes that Leabo and Boger failed to recognize his invention or give him proper credit. Plaintiff filed a series of complaints relating to this dispute in March 2021:

- March 17, 2021: Plaintiff complained to Wesley's Human Resources Business Partner Amanda Miller that another employee was trying to take credit for his invention.

- March 22, 2021: Plaintiff made a similar complaint to Clark.

- March 19 and 25, 2021: Plaintiff complained to Leabo's supervisor, Shane Wanner, about another employee trying to steal credit for his invention.

---

[4]   A court views each motion separately in a light most favorable to the non-moving party when parties file cross-motions for summary judgment. *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016). With this standard in mind, the following facts are uncontroverted. Plaintiff failed to properly controvert any of Defendants' proposed facts. He was instructed how to do so via the required notice filed by Defendants when they filed their summary-judgment motion. Doc. 159. Defendants' facts are deemed admitted. And Plaintiff failed to properly support any of his own proposed facts (other than those stipulated in the pretrial order) until the reply brief to his own motion. The Court addresses the impact of Plaintiff's omissions in Section III.B. of this Memorandum and Order. Needless to say, the stipulated facts in the pretrial order are not enough to carry his summary-judgment burden for his claims.

- <u>March 31, 2021</u>: Plaintiff called two Ethics & Compliance Case Managers to report the same thing about his invention. Wesley investigated but could not substantiate improper conduct.

Plaintiff also alleges that someone tampered with his belongings in late March/early April 2021, when his manager cut the lock off Plaintiff's personal cabinet.

Plaintiff first sought medical care for anxiety on April 15, 2021. He contacted Wesley's third-party leave administrator Time Away From Work (TAFW) on April 19, 2021.

Plaintiff requested leave from April 12 through April 20. TAFW approved the request. Plaintiff then requested and received an extension of leave through May 2. Plaintiff's provider stated Plaintiff was able to return to work on May 3. But Plaintiff did not return on May 3. Clark emailed Plaintiff on May 5 and requested that he report to Human Resources for a meeting. Clark emailed Plaintiff again on May 7, requesting that he meet with her at 7:00 a.m. on May 10. She stated that failure to report to this meeting would be considered separation of employment. Plaintiff responded that same day, advising Clark that his new return-to-work date was May 24. Also on May 7, Plaintiff's therapist submitted documents to TAFW in support of Plaintiff's leave request from April 22 through May 23. TAFW received documentation dated May 7 on May 10, requesting a new return-to-work date of May 24.

Clark emailed Plaintiff again on May 12 to advise him that she had not received documentation supporting leave beyond May 3.[5] She requested that Plaintiff meet with her on May 14, stating:

> I am giving you one final opportunity to report for a meeting with me, Brian, and Jeff to discuss the events of April. Your early departure is not the only topic we need to cover. Please report to

---

[5] Plaintiff suggests that company policy imposed no obligation on him to respond to Clark about his leave. Regardless of whether Plaintiff should have communicated with Clark, Plaintiff presents no evidence that he communicated with <u>anyone</u> other than TAFW about when or whether he would return to work. He also presents no evidence that TAFW was solely responsible for communicating with Clark about Plaintiff's leave status.

> Human Resources on May 14, 2021, at 7:00 a.m. Failure to report
> to this meeting will result in your termination.

Doc. 144 at 4. Plaintiff did not meet with Clark on May 14. Clark did not communicate further with Plaintiff until July 7. She emailed Plaintiff's supervisors on June 18 to advise them that Plaintiff would likely remain on protected leave until July 5, when he would exhaust his FMLA leave. No one at Wesley told Plaintiff that his employment was terminated before July 15, 2021.

Plaintiff continued to communicate with TAFW about his requested leave extension through the month of May 2021. Plaintiff told TAFW on May 24 that his therapist was completing a new form covering the extension from May 3 through May 24. Plaintiff's therapist advised TAFW that she was only certifying Plaintiff for FMLA leave, and that she did not sign off on Plaintiff's short-term disability paperwork. TAFW approved Plaintiff's leave extension on May 26. TAFW advised Plaintiff in its letter approving the leave, "If your leave request is for your serious health condition and you would like to discuss an accommodation in addition to this request for leave, please contact your facility's Human Resource department as soon as possible." Doc. 156-10 at 3. Plaintiff did not contact Human Resources or return to work on May 24 or after. Plaintiff ultimately received all the FMLA leave he requested (and more).

Clark emailed Plaintiff on July 7, which was twelve weeks after Plaintiff began his leave. She instructed him to contact her by July 12 to discuss his employment. Clark also told Plaintiff that she would move forward with administratively separating Plaintiff's employment if she did not hear from him. Plaintiff did not contact Clark. Clark emailed the HR Liaison for TAFW stating, "Can you confirm that William Ward has not reached out or created another claim? We are looking at terminating him since he is no longer on a protected leave." Doc. 144 at 4. Clark terminated Plaintiff's employment effective July 15, 2021, for job abandonment. She advised Plaintiff of his termination by email.

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts applying this standard view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## III.    PRELIMINARY MATTERS

The Court addresses several preliminary matters before turning to the merits. First, the claims identified in the pretrial order are not the same claims Plaintiff briefs on summary judgment. Second, Plaintiff failed to follow the federal rules and the District of Kansas local rules when briefing. Third, Plaintiff requests leave to file a surreply but does not show why one is necessary.

### A.    Scope of Claims

The first matter is the scope of Plaintiff's claims. Plaintiff identifies four claims in the pretrial order:

    i. Count I: Disability Discrimination – Plaintiff was harassed based upon his disability or medical condition.

    ii. Count II: Disability Retaliation – Plaintiff's employment was adversely impacted based upon his disability or medical condition.

    iii. Count III: FMLA Enforcement – Plaintiff's employment was adversely affected by his requests for leave.

    iv. Count IV: FMLA Retaliation – Plaintiff was terminated based upon his attempts to invoke his rights under the FMLA.

5

Doc. 144 at 12. Plaintiff's briefing discusses two additional purported claims—one for failure to accommodate and one for FMLA interference. But these two claims are not delineated in the pretrial order. The pretrial order completely omits any reference to a disability accommodation or interference with FMLA leave. These are distinct claims that Plaintiff should have identified if he wanted to pursue them.

The pretrial order controls the proceedings. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000). Courts have discretion whether to exclude issues and claims not included in the pretrial order. *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991). "A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment." *Id.* Any "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).

Judges in the District of Kansas have repeatedly emphasized the importance of the pretrial order. *See, e.g.*, *Moral v. Hagen*, 2013 WL 1660484, at *7-8 (D. Kan. 2013). The Court utilizes the pretrial order to "immobilize the target" for trial. *Id.*; *see also Fid. & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*, 189 F. Supp. 2d 1212, 1222 (D. Kan. 2002). And the District of Kansas pretrial-order form reminds litigants of the form's importance. It states: "It's essential that each party's factual contentions, legal claims, and defenses be clearly stated." *Pretrial Order Form*, D. Kan., 1 (Dec. 29, 2022), https://ksd.uscourts.gov/civil-forms. Courts rely on the pretrial order heavily to prepare for the final stages of a case.

The Court's review of the dispositive motions at issue was complicated by the differences between the pretrial order and Plaintiff's briefing. Plaintiff may view the Court's emphasis on the verbiage of the pretrial order as overly technical and inflexible. But the pretrial order serves a

significant purpose for the Court and opposing counsel. The form must clearly define the bounds of the claims at issue; otherwise, its value is severely diminished.

The Court recognizes it has discretion whether to construe the pretrial order liberally and broadly. And it ordinarily should. *See Koch*, 203 F.3d at 1220-21. But doing so here would serve injustice to Defendants, who relied on Plaintiff's claims as set forth in the pretrial order to formulate their briefing. Plaintiff identified four claims and gave a brief description for each of them. He also detailed his factual contentions. But nothing in the pretrial order (even liberally construed) notified Defendants or the Court that he meant to include an ADA failure-to-accommodate claim or an FMLA interference claim.

The Court limits the scope of Plaintiff's claims to the four claims in the pretrial order (which, in actuality, are only three claims because Plaintiff's "FMLA enforcement" claim is merely another way to allege that Wesley retaliated against him for requesting and taking leave).[6]

### B.     Rules Governing Briefing

The second matter relates to what facts are considered uncontroverted. Plaintiff's response brief to Defendants' summary-judgment motion does not comply with the federal or local rules. Plaintiff did not properly respond to Defendants' statement of facts as required by Fed. R. Civ. P. 56(c) and D. Kan. Rule 56.1(b)(1). Relatedly, he did not set out separately numbered additional material facts and support them as required by Fed. R. Civ. P. 56(c) and D. Kan. Rule 56.1(b)(2).

---

[6]     It would not matter if the Court addressed Plaintiff's two additional purported claims on the merits. A claim for failure to accommodate requires that a plaintiff requested a "plausibly reasonable accommodation." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017). Plaintiff has presented <u>no</u> evidence suggesting that he requested an accommodation at all. A claim for FMLA interference requires that the employer took an adverse action that interfered with the employee's right to take FMLA leave. *Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir. 2012). But Plaintiff admitted in his deposition that he was not denied leave and received all the FMLA leave he requested. Doc. 156-1 at 17. He therefore is missing at least one element of an interference claim. *Valdez v. McGill*, 462 F. App'x 814, 820 (10th Cir. 2012) ("[The defendant] provided him with the leave to which he was (or may have been) entitled. Thus, there was no interference or retaliation with [the plaintiff's] requesting or taking of FMLA leave."). The summary-judgment outcome of these claims would be the same, regardless of whether the Court considered their merits.

Plaintiff's pro se status does not excuse his noncompliance, especially because Defendants complied with D. Kan. Rule 56.1(f) and sent Plaintiff the required notice for motions for summary judgment. Doc. 159. Thus, the Court deems Defendants' facts admitted and disregards Plaintiff's factual contentions (unless the factual contention is a stipulated fact in the pretrial order). *Canady v. Gen. Motors Corp.*, 368 F. Supp. 2d 1151, 1155 (D. Kan. 2004). On the properly supported record that is not genuinely disputed, Plaintiff fails to show a triable issue of fact for a jury to resolve (entitling Defendants to summary judgment) and fails to show that no reasonable jury could find for Defendants (warranting denial of his motion).

Plaintiff tried to correct this omission in his reply brief to his own summary-judgment motion. He reattached many exhibits to his reply brief and attached new ones. He also set forth a section titled "Concise Statement of Facts," consisting of a numbered list of facts with citations. Doc. 171 at 2-9. The problem with Plaintiff's effort is it comes too late. The reply brief is not the time for identifying a numbered list of uncontroverted facts. This would allow parties to sandbag, saving their critical evidence until after the opposing party has shown its hand. This turns the briefing procedure on its head. *See Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 437 (N.D. Ill. 2006) (observing that "[l]oading-up on a reply brief effectively results in a one-sided presentation, which is hopelessly inconsistent with the very premise on which the adversary system is based," is "unfair to one's opponent," and "adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides"). The Court does not consider the new evidence cited with particularity in Plaintiff's reply brief.[7]

---

[7]   Even if the Court were to consider Plaintiff's evidence cited with particularity, it does not change the outcome. Much of new evidence relates to Plaintiff's contention that Clark terminated his employment on May 14. Plaintiff's argument on this issue is somewhat confusing. Wesley presents evidence that Plaintiff's termination date was July 15, 2021. Plaintiff even cites July 15 as his termination date in one place. Doc. 157 at 18 ("Plaintiff was terminated on July 15, 2021, for alleged job abandonment . . . ."). But elsewhere, Plaintiff argues that Clark actually terminated him on May 14, when he did not attend a meeting with her. But Plaintiff's only evidence supporting this termination date is an unemployment appeals decision that concluded Plaintiff was terminated on May 14. Wesley did not

C.    **Appropriateness of Surreply**

The third matter is Plaintiff's request for leave to file a surreply to Defendants' reply brief to their summary-judgment motion. Doc. 172. Plaintiff claims Defendants raise new issues in their reply brief to their own summary-judgment motion. But Plaintiff did not attach a proposed surreply to his motion, which is required by local rule. D. Kan. R. 15.1. Even if the Court were to consider Plaintiff's deficient filing, the Court would still deny Plaintiff's motion on the merits. This District's local rules generally "do not provide for the filing of surreplies," but leave to file a surreply may be appropriate "where a movant improperly raises new arguments in a reply." *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997) (internal quotations omitted). The Court carefully analyzed Defendants' reply brief. Defendants did not improperly raise new issues or argument in it. Defendants' arguments are in direct response to matters raised and briefed by Plaintiff. There is no justification to allow a surreply. The Court decides the motions on the briefing before it.

IV.    **ANALYSIS**

Plaintiff brings four claims, but the Court analyzes them as three claims requiring two different analyses: (1) disability discrimination based on harassment (hostile work environment) and (2) disability and FMLA retaliation.[8] No reasonable jury could find for Plaintiff on these

---

appear for the unemployment appeal hearing, which was held September 1, 2021. The May 14 date was therefore based on information Plaintiff himself gave to the Kansas Department of Labor. It does not create a genuine issue of material fact about the date Plaintiff was terminated. Neither would an earlier termination date change the outcome here. Plaintiff still lacks evidence suggesting that his termination was because of his leave requests or disability.

[8]    Plaintiff names both an FMLA retaliation count and an FMLA enforcement count in the pretrial order. It seems these counts are essentially the same: Plaintiff claims that Wesley mistreated him and terminated his employment because he requested FMLA leave. To the extent that Plaintiff attempts to pursue a claim for FMLA interference via his "FMLA enforcement" claim, such effort is futile. Plaintiff admits he was granted all leave he requested. There is nothing in the record suggesting that Welsey provided a powerful disincentive for taking leave. *See Howard v. Millard Refrigerated Servs., Inc.*, 505 F. Supp. 2d 867, 881-82 (D. Kan. 2007). As the Court already noted, this precludes an interference claim.

claims, primarily because he has presented no evidence that his anxiety disorder or leave requests were the reason he suffered any mistreatment. Instead, it seems that the root of Plaintiff's problems was his invention of a sprinkler head cleaner, which led to his challenges in the workplace and exacerbated his pre-existing anxiety.

### A.    Disability Discrimination Based on Harassment

Plaintiff claims that he was subjected to harassment, or a hostile work environment, in violation of the Americans with Disabilities Act ("ADA").[9] The Court briefly discusses the requirements for a hostile-work-environment claim and why no reasonable jury could find that Plaintiff has established it.

A hostile work environment exists where a plaintiff (1) was discriminated against because of his disability, and (2) the discrimination was sufficiently severe or pervasive that it altered the terms or conditions of employment. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (outlining the elements for a sexual harassment claim). A series of separate acts can collectively constitute a hostile work environment. *Id.*

A hostile work environment claim requires "facts sufficient to show that the work environment 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 520 (10th Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). There must be facts showing that the work environment is both subjectively and objectively hostile. *Id*. "[Run-of-the-mill] boorish, juvenile, or annoying behavior" is not sufficient, nor are a few isolated incidents. *Throupe*, 988

---

[9]    The governing law is now the ADA Amendments Act of 2008 ("ADAAA"). The Court applies the amended law and regulations. But the Court continues to use the term "ADA" for ease of reference.

F.3d at 1252 (internal quotation and citation omitted). Where "none of the acts [a plaintiff] complains of, either considered alone or in combination, can be said to have altered the conditions of employment such that the atmosphere was abusive . . . . dismissal for failure to state claim is proper." *Chand v. Braithwaite*, 2020 WL 9209284, at *2 (D.S.C. 2020). "[E]ven incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)).

The first problem with Plaintiff's harassment/hostile work environment claim is the causation element. Plaintiff repeatedly argues that he shows a connection between his anxiety disorder (disability) and a hostile work environment because the harassment and hostile environment "exacerbated Plaintiff's disability." *See, e.g.*, Doc. 157 at 2, 7, 8, 13, 15, 16, 24, 26, 35, & 43. The problem with Plaintiff's connection is it's backwards. A claim for a hostile work environment under the ADA must involve discrimination <u>because of the disability</u>. Plaintiff essentially argues disability <u>because of the discrimination</u>. Stated differently, Plaintiff argues that his disability is the damage he suffered because of discriminatory conduct. But not all discrimination is illegal under the ADA. The discrimination must be based on the disability. *See Austin v. Vilsack*, 2024 WL 4436599, at *3 (D. Kan. 2024) (noting that instances of harassment must be tied to the plaintiff's claim); *Melin v. Verizon Bus., Inc.*, 2014 WL 978813, at *4 (D. Kan. 2014) (noting that a "claim for a hostile working environment must ultimately relate back to his alleged disability).

But even if Plaintiff could get around the causation issue, he points to no evidence showing that the work environment was both subjectively and objectively hostile. At most, Plaintiff cites a

few isolated incidents that he complained about to management. He claims that he was told he would be recognized as a Facility All-Star because of his invention to clean sprinkler heads. But "shortly after this recognition, Plaintiff began experiencing harassment and intimidation in the workplace." Doc. 157 at 6. Plaintiff reported false claims of ownership of his invention and escalated his complaints, but Wesley failed to address Plaintiff's reports of harassment. *Id.* at 6-7. Plaintiff claims that Wesley's failure to take corrective action created a hostile working environment. *Id.* at 7. And Plaintiff claims that someone tampered with his personal belongings. These allegations fall short of conduct so pervasive or severe as to alter employment conditions. Even accepting that it impacted Plaintiff such that he needed to take medical leave, that does not automatically mean the conduct satisfies the standard of an objectively hostile working environment. Plaintiff may have been frustrated with management's reaction to his complaints. And he may have been distressed that others were trying to take credit for his invention. But he has presented no evidence rising to the level of an objectively and subjectively abusive working environment. No reasonable jury could find for Plaintiff on his disability harassment claim.

### B.      Retaliation (Disability-Based and FMLA-Based)

Plaintiff claims that his treatment and discharge were retaliatory based on his disability (anxiety disorder) and requests for FMLA leave. The Court addresses Plaintiff's disability- and FMLA-based retaliation claims together because the evidence is essentially the same for both. More precisely, the lack of evidence is the same for both. There is no evidence from which a reasonable jury could find that Plaintiff's treatment or termination was retaliatory because of his disability or FMLA leave.

Any evidence Plaintiff has in support of his retaliation claims is circumstantial. The Court therefore applies the *McDonnell Douglas*[10] standard to them. The *McDonnell Douglas* framework has three steps. First, a plaintiff must make a prima facie case. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). Second, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its action. *Id*. Third, the burden shifts back to the plaintiff to show that the "legitimate" and "non-discriminatory" reasons the defendant offered were pretext for unlawful discrimination. *Id*. "[P]retext is shown by demonstrating such weaknesses, implausibilities, inconsistencies, and incoherencies in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (citation omitted). Typical methods are "direct evidence that the defendant's stated reason for the adverse employment action was false," and evidence of differential treatment from "other similarly situated employees who violated work rules of comparable seriousness." *Id*. at 1167-68 (citation omitted).

Plaintiff fails to establish a prima facie case for purposes of summary judgment. And even if he had, Wesley presents a legitimate, non-discriminatory reason for its actions. Plaintiff fails to establish a genuine issue of material fact whether Wesley's explanation is pretext for retaliatory conduct.

### 1.     Prima Facie Case.

To establish a prima facie case of ADA or FMLA retaliation, a plaintiff must show: (1) he engaged in a protected activity; (2) he was subjected to an employment action that a reasonable employee would find materially adverse; and (3) a causal connection between the two. *Edmonds-*

---

[10]   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Radford v. Sw. Airlines Co.*, 17 F.4th 975, 994 (10th Cir. 2021) (disability); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (FMLA).

Both Plaintiff's retaliation claims suffer from the same causation problem discussed with his harassment claim. In addition to the reasons previously stated, Plaintiff also fails to show causation between his FMLA leave requests and his treatment or termination.

Plaintiff's termination constitutes an employment action that a reasonable employee would find materially adverse. But Clark waited a total of twelve weeks after his leave was first approved to terminate his employment. She then gave him one last chance to contact her. Plaintiff did not. For the last six weeks, Plaintiff had remained out of the office without having updated leave approval. No reasonable juror could conclude based on this evidence that Plaintiff was terminated for any reason other than job abandonment. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) ("[Plaintiff's] request for an FMLA leave does not shelter [him] from the obligation, which is the same as that of any other [company] employee, to comply with [company] employment policies, including its absence policy.").

Plaintiff's "treatment" suffers another malady (in addition to lack of causation): no reasonable jury could find that it constituted an employment action that a reasonable employee would find materially adverse. Plaintiff expresses frustration that Clark contacted him during his leave. But she contacted him when his approved leave was exhausted and she was unaware of new paperwork being submitted. She sent three emails. And Plaintiff didn't respond to two of them. No reasonable jury could find three emails to be materially adverse. Plaintiff also complains that management ignored his complaints about his invention being stolen and that someone tampered with his personal items. These actions happened before Plaintiff even took leave. But even if they

continued during leave, they do not reach the level of materially adverse either alone or in combination. The Court does not address Plaintiff's "treatment" further.

Plaintiff's disability retaliation claim also suffers from another problem: Plaintiff did not engage in a protected activity. There is no evidence the Plaintiff ever complained about disability discrimination. And he did not request an accommodation under the ADA. An inadequate (or non-existent) request for an accommodation does not constitute protected activity. *Foster v. Mt. Coal Co., LLC*, 830 F.3d 1178, 1188 (10th Cir. 2016).

Plaintiff requested medical leave through Wesley's third-party administrator. But TAFW did not share the reason with Wesley. And TAFW advised Plaintiff in a letter that if he "would like to discuss an accommodation in addition to this request for leave, please contact your facility's Human Resource department as soon as possible." Plaintiff did not. None of Plaintiff's actions constituted protected activity under the ADA. Without protected activity (or causation), Plaintiff cannot establish a prima facie case of retaliation.

### 2. Legitimate, Non-Discriminatory Reason for Termination.

The second part of the analysis requires that the employer produce evidence of a legitimate, non-discriminatory reason for the plaintiff's termination (or other adverse action). *McDonnell Douglas*, 411 U.S. at 802. This burden is one of production, not persuasion; it involves no credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Wesley meets this burden. Clark explained that she terminated Plaintiff's employment because he did not return to work after his protected leave was exhausted. In other words, he abandoned his job. This satisfies Wesley's burden.

### 3.    Pretext.

The third part of the analysis shifts the burden back to the plaintiff, who must demonstrate that the employer's proffered reason is pretext for discriminatory or retaliatory motive. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). In analyzing a plaintiff's claim of pretext, courts examine the facts as they appear to the individual making the termination decision; the court's role is not to "second guess" the employer's business judgment. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017); *see Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) ("[O]ur role is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."). Nor is the court's role to ask whether the decision was wise, fair, or correct. *Dewitt*, 845 F.3d at 1307. Rather, the court must determine whether the employer honestly believed the legitimate, non-discriminatory or non-retaliatory reason it gave for its conduct and acted in good faith on that belief. *Id*. Mere conjecture that the employer's explanation is pretext is not enough to justify denial of summary judgment. *Id*.

All Plaintiff has is timing. He was terminated just after his protected leave ended. But temporal proximity alone is not sufficient to defeat summary judgment. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1066 (10th Cir. 2009); *Peterson v. Exide Techs.*, 2011 WL 677150, at *8 (D. Kan. 2011). Plaintiff must have circumstantial evidence of bad motive to survive summary judgment. Plaintiff has not presented this evidence to the Court.

There is a complete dearth of evidence from which a reasonable jury could conclude that Plaintiff was treated poorly or terminated in retaliation for requesting time off for his disability or for turning in FMLA paperwork. The Court grants summary judgment on these claims.

## V.   CONCLUSION

The bulk of this Memorandum and Order analyzes Defendants' motion. The Court has separately viewed Plaintiff's motion in the light most favorable to the non-moving party, as the Court must. The Court gave Plaintiff considerable leeway throughout the briefing of these motions. *See, e.g.*, Docs. 155 (granting additional pages for briefing at Plaintiff's request); 168 (granting Plaintiff's motion to reconsider the Court's decision to strike Plaintiff's improper amendment of a response and allowing said amendment to stand). And Magistrate Judge Severson gave Plaintiff's various requests for relief during pretrial proceedings thoughtful and fair consideration. Throughout the case, both the undersigned and Judge Severson have held Plaintiff's filings to a less stringent standard than those drafted by lawyers. The Court has now reviewed the summary judgment record with the same liberal construction for Plaintiff. But in the end, Plaintiff fails to show a genuine issue of material fact remains for trial, warranting summary judgment in Defendants' favor. And Plaintiff fails to show that no reasonable jury could find for Defendants, warranting denial of his motion.

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 156) is granted and Plaintiff's cross-motion (Doc. 157) is denied. Plaintiff's time to appeal (thirty days) begins to run on the day judgment is entered. Fed. R. App. P. 4. The case is closed.

THE COURT FURTHER ORDERS that Plaintiff's motion for leave to file a surreply (Doc. 172) is denied.

IT IS SO ORDERED.

Dated: May 19, 2025                          /s/ *Holly L. Teeter*
                                             HOLLY L. TEETER
                                             UNITED STATES DISTRICT JUDGE