UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

William Oscar Ward

         Plaintiff/Petitioner - Appellant,

v.

Wesley Medical Center, et al

         Defendant/Respondent -
Appellee.

Case No: 25-3107

Appellant/Petitioner's
Opening
Brief

## APPELLANT'S REPLY BRIEF

**Introduction**

This reply brief is submitted to correct material misstatements and omissions in the appellees' response, rebut their legal arguments, and highlight evidence and legal standards that the district court and appellees have overlooked or misapplied. All factual assertions and procedural history are supported by pinpoint citations to the district court record for the Court's convenience and in compliance with appellate practice. The appellees' brief fails to address key factual disputes and mischaracterizes both the record and the applicable law.

**Summary of Argument:**

There are genuine disputes of material fact regarding hostile work environment, retaliation, and pretext, which are classic jury questions and cannot be resolved on summary judgment. The district court misapplied controlling law by failing to view the evidence in my favor and by requiring direct rather than circumstantial evidence of causation and pretext. The

court's procedural rulings, including strict limitation of claims and exclusion of evidence—unfairly prejudiced my case as a pro se litigant, contrary to the principles of substantive justice in civil rights litigation.

**Correcting the Record**

The appellees' brief misstates and omits key facts that are material to this appeal and necessary for a fair review of the record.

**A. Nature and Timing of Complaints**

Appellees claim my workplace grievances were unrelated to disability or protected activity, focusing only on a dispute over credit for a workplace invention. This is incorrect. After I disclosed my medical condition and requested leave, workplace hostility escalated. Management and coworkers began to scrutinize my work more closely, engaged in intimidation, and took adverse actions against me (ROA, Vol. I, at 167, 253, 261, 265). My complaints to HR and management included concerns about how I was being treated and the negative impact on my health, not just the invention dispute, as shown in communications with HR and the third-party leave administrator (ROA, Vol. I, at 166, 207–215, 218–219, 253–255, 267–274).

These facts show a clear change in workplace conduct directly following my protected activity and disability disclosure. This creates genuine disputes of material facts regarding the connection between my protected status and the adverse actions taken against me and precludes summary judgment. Whether workplace hostility, causation, or pretext exists are factual disputes for a jury—not for resolution on summary judgment.

**B. Protected Activity and Disability Status**

Appellees argue that I did not engage in protected activity under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, or the Family and Medical Leave Act (FMLA),

29 U.S.C. § 2601, and that I never requested an accommodation or complained of disability discrimination. The record directly contradicts this assertion. I requested and was granted FMLA leave for a documented medical condition, and my communications with HR and the leave administrator repeatedly referenced my health status and need for leave (ROA, Vol. I, at 167, 261, 265, 279). These FMLA leave requests are protected activity under both statutes, and the employer was on notice of my disability through medical documentation and multiple leave requests (ROA, Vol. I, at 167, 261, 265, 279). The leave administrator specifically advised me to contact HR for accommodations (ROA, Vol. I, at 280), and my ongoing communications with HR were made in good faith to clarify my employment status and return-to-work plans (ROA, Vol. I, at 167–168, 253–255, 267–274). These facts establish that I engaged in protected activity, that the employer was aware of my disability, and that there is a genuine dispute of material fact on these issues, precluding summary judgment. Whether I engaged in protected activity, whether the employer was on notice of my disability, and whether my communications constituted good faith efforts to clarify my employment status are factual disputes for a jury—not for resolution on summary judgment.

## C. Employer Communications and Termination

Appellees contend that my termination was solely for job abandonment and that I failed to communicate with the employer after my leave expired. The record demonstrates otherwise. I maintained ongoing communication with the third-party leave administrator (TAFW) regarding leave extensions and documentation, including multiple contacts throughout May 2021 and updates about my therapist completing new forms for leave extension (ROA, Vol. I, at 267–274, 276–277). HR's emails show ongoing confusion and lack of clarity about my status, including requests for meetings and documentation, and HR's own acknowledgment that they had not received supporting documentation for leave beyond May 3, 2021, even

though TAFW had received it (ROA, Vol. I, at 168, 254–255). I was not notified of termination until July 15, 2021, when HR sent an email stating my employment was terminated effective that date for job abandonment, following a July 7, 2021 email instructing me to contact HR by July 12, 2021 (ROA, Vol. I, at 169, 283). The assertion that I was given "multiple chances" to return to work fails to account for the inconsistent timing and content of HR communications, which did not clearly advise me of the risk of termination until after my protected leave had expired (ROA, Vol. I, at 167–168, 283). These circumstances present genuine disputes of material fact for a jury. Whether the circumstances surrounding my termination, including the nature, and timing of communications with HR and the leave administrator, constitute evidence of pretext or causation are factual disputes for a jury—not for resolution on summary judgment.

**D. Inaccuracies Regarding Leave and Adverse Action**

Appellees assert I received all FMLA leave requested and suffered no adverse action related to protected activity. The record shows otherwise. My last approved FMLA leave ended on May 23, 2021. I was terminated on July 15, 2021, after HR's July 7, 2021, communication (ROA, Vol. I, at 169, 279, 283). The employer's stated reason for termination shifted over time—from failure to attend meetings and provide documentation, to job abandonment—as reflected in HR's emails and the district court's summary judgment order (ROA, Vol. I, at 169, 283; District Court Order, ROA, Vol. I, at 954–970). Such inconsistencies are recognized by the Tenth Circuit as evidence of pretext, which must be evaluated by a jury. The timing of my termination, occurring within weeks of the end of protected leave and after ongoing communications about my status, further supports an inference of causation (ROA, Vol. I, at 279, 283).

In summary, appellees misstate and omit key facts regarding my complaints, protected activity, disability status, and employer communications. The record demonstrates genuine disputes of material fact—particularly regarding causation and pretext. Whether causation or pretext exists are quintessential jury questions, not for resolution on summary judgment (ROA, Vol. I, at 167–170, 267–277, 279, 283, 954–970).

**Rebutting Legal Arguments — Hostile Work Environment**

Appellees mischaracterize both the facts and law regarding my hostile work environment claim, incorrectly asserting that my complaints were limited to a workplace dispute and that the conduct was not severe or pervasive under the ADA (see ROA, Vol. I, at 213–215, 954–965).

**A. Escalating and Ongoing Incidents**

After I disclosed my medical condition and requested leave, workplace interactions changed: management scrutinized my work, I was intimidated, and my personal belongings were tampered with, including the cutting of my cabinet lock (ROA, Vol. I, at 166–168, 214–215, 280, 954–965). HR and supervisors repeatedly failed to address my documented concerns (ROA, Vol. I, at 167–168, 253–254, 954–965). These incidents were not isolated; they formed a continuous and intensifying course of conduct after my protected status became known (ROA, Vol. I, at 167–168, 253–254, 954–965).

The cumulative effect of these incidents, not any single event, supports a finding of a hostile work environment. The Tenth Circuit holds that the "severe or pervasive" standard is disjunctive and requires consideration of the totality of the circumstances. See McGowan v. Bd. of Trs. for Metro. State Univ. of Denver, 114 F. Supp. 3d 1129, 1137 (D. Colo. 2015); Thompson v. KN Energy, Inc., 177 F. Supp. 2d 1238, 1247 (D. Kan. 2001). Whether these facts amount to a hostile work environment is a classic jury question, not for

resolution on summary judgment. Whether workplace hostility, causation, or pretext exists are factual disputes for a jury—not for resolution on summary judgment.

The timing and context of these incidents, as shown in the record, support a reasonable inference that the escalation of hostility was directly related to my disability disclosure and requests for protected leave, which precludes summary judgment (ROA, Vol. I, at 167–168, 253–254, 954–965). Whether the escalation of hostility and its connection to my disability and protected activity constitutes a hostile work environment is a classic jury question, not for resolution on summary judgment.

**B. Misapplication of the "Severe or Pervasive" Standard**

The district court and appellees failed to apply the correct legal standard by evaluating each incident in isolation and ignoring the cumulative impact of ongoing mistreatment (ROA, Vol. I, at 964–965). The law requires courts to assess the totality of the circumstances, recognizing that a hostile work environment may be established by a series of acts that collectively create an abusive or intimidating atmosphere—even if no single incident is independently actionable. The Tenth Circuit has made clear that the "severe or pervasive" standard is disjunctive: conduct is actionable if it is either severe or pervasive, and courts must consider all relevant incidents together. See McGowan v. Bd. of Trs. for Metro. State Univ. of Denver, 114 F. Supp. 3d 1129, 1137 (D. Colo. 2015); Thompson v. KN Energy, Inc., 177 F. Supp. 2d 1238, 1247 (D. Kan. 2001). The record documents repeated and ongoing mistreatment, including management's failure to intervene, which resulted in a work environment that was both objectively and subjectively hostile (ROA, Vol. I, at 954–965). The determination of whether the cumulative conduct rises to the level of a hostile work environment is a factual dispute that must be resolved by a jury, not by the court on summary judgment. Whether the cumulative effect of these incidents constitutes a hostile

work environment is a quintessential jury question, not for resolution on summary judgment.

**C. Overlooked Evidence of Causation and Pattern**

Appellees disregard substantial evidence that the escalation of workplace hostility was directly tied to my disclosure of disability and requests for leave. The record demonstrates that adverse actions and negative treatment intensified after I engaged in protected activity, including submitting FMLA leave requests and medical documentation (ROA, Vol. I, at 167–168, 213–215, 218–220, 254–255, 279–280). HR communications about my employment status became more frequent and urgent following these disclosures (ROA, Vol. I, at 167–168, 283). My complaints to HR referenced not only the invention dispute but also the impact of workplace conduct on my health and ability to work, as shown in communications with HR and the leave administrator (ROA, Vol. I, at 209, 214–215, 218, 253, 261). The district court failed to draw all reasonable inferences in my favor, as required at summary judgment, and instead accepted appellees' version of the facts without considering the broader pattern of conduct (District Court Order, ROA, Vol. I, at 963–965). These disputes—regarding the existence, cause, and impact of workplace hostility—are classic jury questions, not for resolution on summary judgment.

**D. Legal and Factual Disputes Preclude Summary Judgment**

Whether a work environment is sufficiently hostile, and whether adverse actions were causally linked to protected activity, are quintessential questions for a jury, particularly where the record shows ongoing and escalating mistreatment following protected activity (ROA, Vol. I, at 167–168, 213–215, 218–220, 254–255, 279–283). The district court's conclusion that the conduct was not severe or pervasive improperly resolved factual disputes and failed to apply the correct legal standard (District Court Order, ROA, Vol. I, at

964–965). The Tenth Circuit has made clear that the "severe or pervasive" standard is disjunctive and requires consideration of the totality of the circumstances, not isolated incidents. See McGowan v. Bd. of Trs. for Metro. State Univ. of Denver, 114 F. Supp. 3d 1129, 1137 (D. Colo. 2015); Thompson v. KN Energy, Inc., 177 F. Supp. 2d 1238, 1247 (D. Kan. 2001).

The cumulative effect of these incidents, as documented in the record, creates genuine disputes of material fact that must be resolved by a jury, not by the court on summary judgment (ROA, Vol. I, at 167–168, 213–215, 218–220, 254–255, 279–283; District Court Order, ROA, Vol. I, at 963–965). Whether the cumulative effect of these incidents amounts to a hostile work environment, and whether adverse actions were causally linked to protected activity, are classic jury questions that cannot be resolved on summary judgment.

**Rebutting Legal Arguments — Retaliation Claims**

Appellees argue that I did not engage in protected activity under the ADA or FMLA, and that my termination was solely for job abandonment, not in retaliation for protected conduct. This argument is contradicted by both the record and controlling law.

**A. Evidence of Protected Activity**

The record and law both support that I engaged in protected activity as defined by the ADA and FMLA. Requesting and taking FMLA leave for a serious health condition is protected activity under 29 U.S.C. § 2601 and 42 U.S.C. § 12112. I requested and was granted FMLA leave for a documented medical condition, submitted medical documentation, and maintained ongoing communication with both the third-party leave administrator (TAFW) and HR regarding my health status and need for leave (ROA, Vol. I, at 167–168, 253–280). The employer was on notice of my disability through repeated leave requests and medical documentation (ROA, Vol. I, at 261, 265, 279). These facts establish that I engaged in

protected activity and that the employer was aware of my disability, creating a genuine dispute of material facts. Whether I engaged in protected activity and whether the employer was aware of my disability are classic jury questions that cannot be resolved in summary judgment.

My communications with HR specifically referenced my medical condition and described how workplace conduct was affecting my health, further putting the employer on notice of my protected status (ROA, Vol. I, at 167–168, 219–220, 253–255). The leave administrator advised me to contact HR for accommodations (ROA, Vol. I, at 280), and my ongoing communications with HR were made in good faith to clarify my employment status and return-to-work plans (ROA, Vol. I, at 167–168, 253–255, 267–274). Appellees' claim that I did not seek accommodation or complain of disability discrimination is unsupported by the record and ignores the legal protections for employees who request leave for medical reasons.

Under the McDonnell Douglas burden-shifting framework, a retaliation claim requires: (1) engagement in protected activity, (2) an adverse employment action, and (3) a causal connection between the two. Once a prima facie case is established, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse action, and then back to the employee to show that the stated reason is pretextual. See DePaula v. El Mirador, 859 F.3d 957, 968 (10th Cir. 2017); Russell v. Phillips 66 Co., 184 F. Supp. 3d 1258, 1270 (N.D. Okla. 2016). The record shows the employer's reasons for termination were inconsistent and unsupported, indicating pretext (ROA, Vol. I, at 169, 283; District Court Order, ROA, Vol. I, at 954–970). Such inconsistencies are recognized by the Tenth Circuit as evidence of pretext, which must be evaluated by a jury. Whether pretext exists is a quintessential jury question, not for resolution on summary judgment.

**B. Temporal Proximity and Causation**

Appellees minimize the timing of my termination, arguing it was unrelated to protected activity. The record shows my termination occurred immediately after the exhaustion of my approved FMLA leave, during a period of confusion and inconsistent communication from HR about my employment status (ROA, Vol. I, at 168, 279–283). Temporal proximity between protected activity and adverse employment action is a recognized basis for inferring causation under the McDonnell Douglas framework. See DePaula, 859 F.3d at 968; Russell, 184 F. Supp. 3d at 1270. Here, the employer's stated reasons for termination are not supported by clear or consistent documentation (ROA, Vol. I, at 283, 169). The district court failed to draw all reasonable inferences in my favor, instead accepting appellees' narrative and disregarding evidence of temporal proximity and causation (District Court Order, ROA, Vol. I, at 965–969). These factual disputes must be resolved by a jury, not in summary judgment. Whether causation exists and whether the employer's stated reasons are credible or pretextual are classic jury questions that cannot be resolved on summary judgment.

**C. Inconsistencies and Pretext in Employer Explanations**

The employer's explanation for my termination shifted over time—from job abandonment to alleged failures to communicate—despite my ongoing efforts to clarify my leave status and return-to-work plans (ROA, Vol. I, at 167–168, 283; District Court Order, ROA, Vol. I, at 954–970). I was not notified of my termination until July 15, 2021, and HR's communications about my status were inconsistent and, at times, contradictory (ROA, Vol. I, at 169, 283). For example, in May 2021, HR sent multiple emails requesting meetings and documentation, even though TAFW had already received my medical documentation and approved my leave extension (ROA, Vol. I, at 254–255, 267–279). HR's July 7, 2021,

email instructed me to contact them by July 12, 2021, but did not state that termination was imminent until the July 15, 2021, notice (ROA, Vol. I, at 283).

These shifting explanations and inconsistent communications are classic evidence of pretext under the McDonnell Douglas framework. Such inconsistencies are recognized by the Tenth Circuit as evidence of pretext, which must be evaluated by a jury. See Russell v. Phillips 66 Co., 184 F. Supp. 3d 1258, 1270 (N.D. Okla. 2016); DePaula v. El Mirador, 859 F.3d 957, 968 (10th Cir. 2017). The district court failed to properly analyze these inconsistencies or consider whether the employer's stated reason for termination was a pretext for retaliation against protected activity (District Court Order, ROA, Vol. I, at 965–969). Whether the employer's explanation is credible or pretextual is a classic jury question, not for summary judgment.

The district court misapplied the McDonnell Douglas burden-shifting framework by requiring direct evidence of retaliatory motive and failing to credit circumstantial evidence such as protected activity, temporal proximity, and pretext, contrary to controlling law (District Court Order, ROA, Vol. I, at 965–969). Under established precedent, once a prima facie case of retaliation is shown, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse action, and then back to the employee to demonstrate that the employer's stated reason is pretextual. See DePaula v. El Mirador, 859 F.3d 957, 968 (10th Cir. 2017); Russell v. Phillips 66 Co., 184 F. Supp. 3d 1258, 1270 (N.D. Okla. 2016).

The record contains clear evidence of protected activity (ROA, Vol. I, at 167–168, 253–280), close timing between the end of my FMLA leave and my termination (ROA, Vol. I, at 279, 283), and shifting explanations from the employer regarding the reason for my termination (ROA, Vol. I, at 169, 283; District Court Order, ROA, Vol. I, at 954–970).

Such inconsistencies are recognized by the Tenth Circuit as evidence of pretext, which must be evaluated by a jury. These facts create genuine disputes of material fact as to both causation and pretext—issues that are classic jury questions and cannot be resolved on summary judgment.

Appellees' argument that I did not engage in protected activity or that my termination was solely for job abandonment is directly contradicted by the record (ROA, Vol. I, at 167–168, 169, 253–283; District Court Order, ROA, Vol. I, at 954–970) and reflects a misapplication of the law. Whether my termination was causally connected to protected activity and whether the employer's stated reasons were pretextual are quintessential questions for a jury, not for summary judgment. These are precisely the types of factual disputes that the Tenth Circuit has held must be resolved by a jury—not by the court on summary judgment.

**Addressing Procedural and Evidentiary Rulings**

The district court's procedural and evidentiary decisions unfairly limited my ability to present my claims, particularly as a pro se litigant. First, the court restricted my case to only those claims listed in the pretrial order, excluding additional claims for failure to accommodate and FMLA interference, even though my briefing and factual submissions made clear these issues were central to my case (ROA, Vol. I, at 16, 176, 958–960). Tenth Circuit precedent gives courts discretion to interpret pretrial orders liberally, especially when the record shows a party intended to pursue related claims and the opposing party would not be unfairly surprised. See Koch v. Koch Industries, Inc., 203 F.3d 1202, 1220–21 (10th Cir. 2000); Hullman v. Bd. of Trs. of Pratt Cmty. Coll., 950 F.2d 665, 667 (10th Cir. 1991) (ROA, Vol. I, at 958–960). The district court's rigid approach was overly technical and unjust, depriving me of a fair opportunity to present my case (ROA, Vol. I, at 958–960; District Court Order, ROA, Vol. I, at 954–970).

Second, the court excluded evidence I submitted in my reply brief—including exhibits and a concise statement of facts—on the grounds that it was untimely (ROA, Vol. I, at 960–961). While local rules generally discourage new arguments or evidence in reply, courts retain discretion to consider such materials when necessary to ensure a complete and fair record, especially in civil rights cases involving pro se litigants (ROA, Vol. I, at 960–961; District Court Order, ROA, Vol. I, at 954–970). Excluding this evidence was prejudicial and contrary to the liberal construction required for pro se filings under Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (District Court Order, ROA, Vol. I, at 954–970). The cumulative effect of these procedural errors denied me a fair opportunity to present my claims, contrary to the principles of substantive justice in civil rights litigation.

These procedural errors—including the strict limitation of claims, exclusion of relevant evidence, and refusal to grant further extensions or stays despite documented disabilities—substantially prejudiced my ability to present my case and undermined the fairness of the proceedings (ROA, Vol. I, at 8–17, 954–970). In civil rights litigation, especially where a party is self-represented, courts are required to liberally construe pleadings and submissions and ensure that procedural technicalities do not override substantive justice. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991); Koch v. Koch Industries, Inc., 203 F.3d 1202, 1220–21 (10th Cir. 2000). The cumulative effect of these procedural errors denied me a fair opportunity to present my claims, contrary to the principles of substantive justice in civil rights litigation.

**Legal Standards and Law Overlooked or Misapplied**

The district court and appellees misapplied the legal standards governing hostile work environment and retaliation under the ADA and FMLA, resulting in an improper grant of summary judgment (District Court Order, ROA, Vol. I, at 954–970).

## A. Hostile Work Environment under the ADA

To establish a hostile work environment under the ADA, a plaintiff must show unwelcome harassment based on disability that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. The Tenth Circuit's standard is disjunctive: conduct may be actionable if it is either severe or pervasive, and courts must evaluate the totality of the circumstances, not just isolated incidents. See McGowan v. Bd. of Trs. for Metro. State Univ. of Denver, 114 F. Supp. 3d 1129, 1137 (D. Colo. 2015); Thompson v. KN Energy, Inc., 177 F. Supp. 2d 1238, 1247 (D. Kan. 2001) (District Court Order, ROA, Vol. I, at 964–965). Whether the conduct rises to the level of a hostile work environment, or whether the totality of the circumstances meets the "severe or pervasive" standard, are quintessential jury questions—not for resolution on summary judgment. Such determinations must be made by a jury, not by the court at summary judgment.

The district court erred by analyzing each incident in isolation and failing to consider the cumulative effect of ongoing and escalating mistreatment that followed my disclosure of disability and requests for protected leave (District Court Order, ROA, Vol. I, at 964–965). Instead of evaluating the overall pattern of hostility documented in the record, the court focused narrowly on individual events—such as coworkers taking credit for my invention, not receiving an "All-Star" award, or alleged tampering with my belongings—and asked whether each was severe or pervasive on its own (District Court Order, ROA, Vol. I, at 964–965). This approach is contrary to Tenth Circuit precedent, which requires courts to assess the cumulative impact of all relevant incidents when determining whether a hostile work environment exists. By failing to apply the correct standard, the district court prevented the jury from considering the full scope of workplace hostility—an issue that is a classic question for the jury, not for resolution on summary judgment—and reversal is

warranted. Whether the existence and severity of a hostile work environment are met are quintessential jury questions, not for resolution on summary judgment.

## B. Retaliation under the ADA and FMLA

To establish retaliation under the ADA and FMLA, a plaintiff must show: (1) engagement in protected activity, (2) an adverse employment action, and (3) a causal connection between the two. Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action, and then back to the employee to show that the stated reason is pretextual. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973); DePaula v. El Mirador, 859 F.3d 957, 968 (10th Cir. 2017); Russell v. Phillips 66 Co., 184 F. Supp. 3d 1258, 1270 (N.D. Okla. 2016).

The district court misapplied this framework by requiring direct evidence of retaliatory motive and disregarding well-established circumstantial evidence. Under controlling law, circumstantial evidence—such as temporal proximity between protected activity and adverse action and shifting or inconsistent explanations by the employer—is sufficient to support an inference of causation and pretext. See DePaula, 859 F.3d at 968; Russell, 184 F. Supp. 3d at 1270. The record shows my termination occurred immediately after the exhaustion of my FMLA leave (ROA, Vol. I, at 279, 283), and the employer's explanations for my termination shifted over time, from alleged job abandonment to purported failures to communicate (ROA, Vol. I, at 169, 283). HR communications and leave documentation further reveal inconsistencies and contradictions (ROA, Vol. I, at 168, 254–255, 267–279, 283; District Court Order, ROA, Vol. I, at 954–970). Such inconsistencies are recognized by the Tenth Circuit as evidence of pretext, which must be evaluated by a jury. These facts create a genuine dispute of material fact regarding retaliation and pretext and require reversal of summary judgment. These are classic jury questions that cannot be resolved on

summary judgment. Whether the employer's stated reasons were pretextual and whether there was a causal connection between my protected activity and termination are quintessential jury questions, not for resolution on summary judgment.

These facts, when viewed in the light most favorable to me, are more than sufficient to create genuine disputes of material fact regarding both causation and pretext. The Tenth Circuit recognizes that disputes over causation, pretext, and workplace hostility are quintessential jury questions and must not be resolved on summary judgment. The district court failed to credit this circumstantial evidence and improperly insisted on direct proof of retaliatory motive, which is contrary to controlling law and requires reversal.

Summary judgment is only appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. The court must view all evidence in the light most favorable to the non-moving party and draw every reasonable inference in that party's favor. See Fed. R. Civ. P. 56; DePaula v. El Mirador, 859 F.3d 957, 968 (10th Cir. 2017); District Court Order, ROA, Vol. I, at 954–970. Here, the record contains substantial evidence of protected activity (FMLA leave requests and medical documentation, ROA, Vol. I, at 167–168, 261, 265, 279), adverse employment action (termination effective July 15, 2021, ROA, Vol. I, at 169, 283), temporal proximity (termination closely following exhaustion of protected leave, ROA, Vol. I, at 279, 283), and a pattern of escalating hostility (HR communications and workplace incidents, ROA, Vol. I, at 167–168, 213–215, 218–220, 254–255, 279–283). These are classic jury questions that must be resolved by a jury, not on summary judgment.

The district court's failure to recognize these disputes and its acceptance of appellees' narrative without proper scrutiny was a misapplication of the summary judgment standard. See DePaula, 859 F.3d at 968; District Court Order, ROA, Vol. I, at 954–970.

## Conclusion and Relief Sought

For the reasons set forth above, the district court's grant of summary judgment was improper. The record establishes genuine disputes of material fact regarding (1) whether a hostile work environment existed, (2) whether my termination was in retaliation for protected activity, and (3) whether the employer's stated reasons for termination were pretextual (see District Court Order, ROA, Vol. I, at 954–970). The district court and appellees misapplied controlling legal standards, failed to view the evidence in the light most favorable to the non-moving party, and issued procedural rulings that unfairly prejudiced my ability to present my claims as a pro se litigant (see District Court Order, ROA, Vol. I, at 954–970).

For these reasons, I respectfully request reversal of summary judgment and demand for trial on the merits, or such other relief as the Court deems just and appropriate.

10/8/2025
_____
Date

_____
Signature

## CERTIFICATE OF SERVICE

I hereby certify that on __October 8th, 2025__ I sent a copy of
(date)
the Appellant's Reply Brief to __Timothy J Davis, Sarah R. Holdmeyer and__

__Tyler J. Briggs__ , at __Bryan Cave Leighton Paisner LLP__
(Opposing Party or Attorney)
1200 Main Street Suite 3800 Kansas City, MO 64105 , the last known address/email

address, by __Priority Mail USPS__ .
(state method of service)


__10/8/2025__
Date

Signature

PRESS FIRMLY TO SEAL


FSC
MIX
FSC® C116916


PAPER POUCH
how2recycle.info

PRESS FIRMLY TO SEAL

PRIORITY MAIL
LEGAL FLAT RATE ENVELOPE
POSTAGE REQUIRED


UNITED STATES
POSTAL SERVICE

**PRIORITY® MAIL**

■ Expected deliv

■ Domestic ship

■ USPS Tracking

■ Limited interna

■ When used inte

*Insurance does not c
Domestic Mail Manua
** See International M

**LEGAL FL**
ONE RATE ■ ANY


**TRACKED**


PS000010000

---

UNITED STATES
POSTAL SERVICE.                    Retail

P    US POSTAGE PAID
     $12.10          Origin: 67060
                     10/08/25
                     1939710602-3

**PRIORITY MAIL®**

                              1 Lb 4.90 Oz
                              RDC 03

EXPECTED DELIVERY DAY:  10/11/25

SHIP
TO:
     DENVER CO 80257

USPS TRACKING® #



9505 5118 1341 5281 6788 08

---

apply).*

ernational destinations.

uired.

s see the

tions of coverage.

kage Pickup,
code.



Scanned by
US Marshal

**FROM:**
William Ward
928 E 52nd St S
Wichita KS 67216

Clerk of Court:
**TO:** Christopher M. Wolpert
United States Court of
Appeals for the tenth Circuit
Byron White United States
     Courthouse
1823 Stout Street
Denver, CO 80257

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14L © U.S. Postal Service; October 2023; All rights reserved





**PRIORITY**®
**M A I L**

# LEGAL FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

# TRACKED ■ INSURED



PS00001000060

Legal Flat Rate Envelope
EP14L October 2023
OD: 15 x 9.5

**VISIT US AT USPS.CO**
ORDER FREE SUPPLIES ONLI

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.